DOUGLAS R. SCHWARTZ (State Bar No. 98666)
PETRA M. REINECKE (State Bar No. 154482)
SCOTT R. LOVERNICK (State Bar No. 233755)
SCHWARTZ & CERA LLP
44 Montgomery Street, Suite 3850
San Francisco, California 94104
Telephone: (415) 956-2600
Facsimile: (415) 438-2655

Attorneys for Defendants
U.S. PARKING, INC. and
CIHAT ESREFOGLU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IBRAHIM E. KURTCU, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. PARKING, INC., a corporation; CIHAT ESREFOGLU, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. C 08-02113-WHA<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br><br>**[Request for Judicial Notice, Declaration of Orhan Kaplankiran and Proposed Order filed separately]**<br><br>DATE: June 5, 2008<br>TIME: 8:00 a.m.<br>CTRM: 9, 19th Floor |

TO THE CLERK OF THIS COURT AND TO PLAINTIFF IBRAHIM E. KURTCU AND HIS ATTORNEYS:

PLEASE TAKE NOTICE that on June 5, 2008, at 8:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 9 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendants U.S. PARKING, INC. and CIHAT ESREFOGLU (hereinafter "Defendants") will move the Court for

1   dismissal of Plaintiff's Complaint in this matter for failure to state a claim upon which relief can

2   be granted or, in the alternative, for summary judgment in their favor.

3        This motion is made pursuant to Federal Rule of Civil Procedure sections 12(b)(6) and

4   56(b) on the basis that plaintiff's complaint fails to state a claim upon which relief may be

5   granted because plaintiff's claims are precluded by the doctrines of res judicata and collateral

6   estoppel, as further set forth in the accompanying memorandum.  This motion is based on this

7   notice, the attached memorandum of points and authorities, the request for judicial notice and

8   supporting declaration served and filed herewith, on all applicable law, on the pleadings and

9   records in this case, and on such further evidence and argument as may be submitted before and

10  at the hearing of this motion.

11  DATED:  April 28, 2008                    Respectfully submitted,

12

13                                     /s/
                                    _____
14                                  DOUGLAS R. SCHWARTZ
                                    PETRA M. REINECKE
15                                  Attorneys for Defendants
                                    U.S. PARKING, INC. and
16                                  CIHAT ESREFOGLU

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT
Case No. C 08-02113-WHA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendants U.S. PARKING, INC. and CIHAT ESREFOGLU (hereinafter "Defendants") hereby move for dismissal of Plaintiff's Complaint in this matter for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment in their favor.

In this action, Plaintiff seeks recovery of overtime and premium pay and other wages he claims are due to him pursuant to "contract" and under federal and state wage laws. Plaintiff's Complaint fails to state a claim, and is barred by res judicata and collateral estoppel, because plaintiff availed himself of the binding arbitration process under the Collective Bargaining Agreement which covers his employment with defendant U.S. Parking. Plaintiff, after the filing of his lawsuit in state court, attended a binding arbitration hearing regarding his wage claims, signed a separate written agreement acknowledging the binding nature of the proceeding, and was awarded and paid the sum of $64,048 in wages, including overtime, based on his claims that he was incorrectly paid wages and benefits since he started working for U.S. Parking on February 28, 2003. In pursuing and completing the arbitration process, in which he was successful and under which he received and was paid an award far in excess of the amount he had originally demanded in his grievance, plaintiff's claims have been fully adjudicated and redressed, and he should be barred from relitigating the same claims in this Court.

## II.     STATEMENT OF ISSUES TO BE DECIDED

This motion requests that the Court determine whether the plaintiff's pursuit and completion of a grievance procedure contained in a collective bargaining agreement governing his employment, in which he prevailed and was paid, precludes him from bringing similar claims under the same facts in this Court.

## III.     STATEMENT OF FACTS

Defendant U.S. Parking, Inc. ("U.S. Parking") is a California corporation which operates a number of parking lots in San Francisco and one lot in Oakland. Declaration of Orhan Kaplankiran in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment

("Kaplankiran Declaration"), ¶3.  The business leases parking lots from the City and manages or operates them.  *Id.*  U.S. Parking was founded in 1995 by defendant Cihat Esrefoglu, a Turkish immigrant.  *Id.* From its modest beginnings operating one parking lot, it has expanded in the last 12 years to employ approximately 90 people, most of them Turkish and other immigrants getting their start in the United States.  *Id.*

Plaintiff, an immigrant from Turkey, is a current employee of defendant U.S. Parking who works as a parking lot attendant.

On March 12, 2008, plaintiff filed a Class Action Complaint in the Superior Court of the State of California, County of San Francisco entitled *Ibrahim E. Kurtcu, on behalf of himself and others similarly situated vs. U.S. Parking, Inc., a Corporation; Cihat Esrefoglu, an individual; and Does 1 through 10, inclusive*, Case No. CGC08-473240 (hereinafter "Complaint").  The members of the putative class are current and former employees of defendant U.S. Parking in the State of California who were or are employed as parking lot attendants.  The Complaint contains six causes of action, for (1) failure to pay overtime and premium pay under the Fair Labor Standards Act and California law; (2) failure to timely pay all wages due under California law; (3) failure to provide meal and rest periods under California law; (4) failure to provide itemized wage statements under California law; (5) failure to pay all wages to separated employees under California law; and (6) unfair competition under California law.

On April 23, 2008, defendants removed the case to this Court.

By his Complaint, Plaintiff alleges that he often worked 12 hours or more per day and also often worked six or seven days per week, but that, "until on or about January 1, 2007, defendants willfully failed to pay plaintiff KURTCU and other parking lot attendants at one-and-a-half times their regular rate of pay when required by law, and failed to pay parking lot attendants at double the regular rate of pay when required by law."  Complaint, ¶10. Furthermore, the Complaint alleges, defendant U.S. Parking failed to pay all regular wages on a timely basis and paid less than the "regular hourly rate of pay established by contract." Complaint, ¶11 (emphasis added). The Complaint goes on to state:

In addition, defendant willfully failed to pay plaintiff KURTCU and other parking lot attendants the full wages and compensation they were <u>due by contract</u>, insofar as U.S. PARKING failed to pay plaintiff KURTCU and other parking attendants for their vacation time, holiday pay, sick and hospital leave pay, other paid leaves of absence (for jury duty, subpoenas, bereavement and voting), health, dental-orthodontia, prescription drug, vision, accident, sick, disability and life insurance, pension, 401k benefits, commuter checks, free uniforms, boots, tools and rain gear, plus maintenance of the same, and other benefits – that they were entitled to.

Complaint, ¶12 (emphasis added).

The "contract" referenced in the Complaint, but not specifically identified, is a Collective Bargaining Agreement entitled *Master Agreement and Area Standards, Employment Practices in the Parking and Garage Industry, San Francisco and San Mateo Counties, By and Between Teamsters Automotive and Allied Workers, Local Union No. 665 and the Signatory Employers, December 1, 2003 through November 30, 2008* (hereinafter "CBA"). Kaplankiran Declaration, ¶8 and Exhibit A thereto. Defendant U.S. Parking is a signatory employer to the CBA. Kaplankiran Declaration, ¶8 and CBA (Exhibit A to Kaplankiran Declaration), at page 30.

The CBA contains a grievance procedure for "all" "complaints or disputes" between the employee and the employer, and "[a]ll money claims against the employer." CBA (Exhibit A to Kaplankiran Declaration), §29. The grievance process is a three-tier process. First, settlement is attempted between the union representative and the employer. CBA (Exhibit A to Kaplankiran Declaration), §30(A). Then, the CBA provides, "[a]ll complaints concerning a violation of this Agreement, all questions or disputes concerning the meaning, interpretation, application or enforcement of this Agreement which are not settled in the manner above provided … shall be referred to a Board of Adjustments …. [or] to an impartial mediator … [who] will issue a binding recommendation to the parties. Either party to the mediation may reject the non-binding recommendation by demanding Arbitration…." CBA (Exhibit A to Kaplankiran Declaration), §30(B).

The final tier of the grievance procedure provided for in the CBA is as follows:

In the event that the Adjustment Board is unable to reach a decision by majority or unanimous vote on any such matter, or a party is dissatisfied with the non-binding recommendation of the mediator, the party may bring the matter to an impartial arbitrator by demanding arbitration in writing to the Federal Mediation and

Conciliation Service within ten (10) business days of receiving notice from the Board of Adjustment or the mediator. The decision of the impartial arbitrator shall be final and binding. Each side shall pay one-half the charges of such arbitrator.

CBA (Exhibit A to Kaplankiran Declaration), §30(D).

On or about October 11 or 12, 2007, plaintiff filed a grievance with Local Union No. 665. Kaplankiran Declaration, ¶12. Plaintiff's grievance alleged that he was incorrectly paid wages and benefits since he started working for U.S. Parking on February 28, 2003. *Id.* Ernie Yates, the Secretary Treasurer of Local Union No. 665, contacted U.S. Parking regarding plaintiff's grievance, and at least one meeting occurred between Mr. Yates, Mr. Esrefoglu and Orhan Kaplankiran, U.S. Parking's Vice President of Operations & Human Resources in an attempt to resolve plaintiff's grievance. Kaplankiran Declaration, ¶¶12-13. When the grievance was not resolved, plaintiff and U.S. Parking mediated the dispute on October 26, 2007. Kaplankiran Declaration, ¶14. When the mediation also failed to resolve the dispute, the matter was submitted by the parties to binding arbitration, as provided for in section 30 of the CBA. *Id.*

On March 19, 2008 (six days _after_ the filing of plaintiff's Complaint in this matter in San Francisco Superior Court), the arbitration hearing was held in Daly City before Ruth Carpenter, an arbitrator with the Federal Mediation and Conciliation Service. Kaplankiran Declaration, ¶15. Plaintiff attended the hearing. *Id.* Also present at the hearing were Plaintiff's union representative, Mark Gleason, the President of Local Union No. 665, and Mr. Kaplankiran on behalf of U.S. Parking. *Id.* Before the hearing commenced, plaintiff Kurtcu, Mr. Kaplankiran on behalf of U.S. Parking, and Mr. Gleason on behalf of the union all signed a written confirmation of their agreement "to submit to the arbitrator the grievance of Mr. Ibrahim E. Kurtcu vs. U.S. Parking, Inc." Kaplankiran Declaration, ¶16 and Exhibit B. This agreement further stated, immediately above the signature lines, that "the decision of the impartial arbitrator shall be final and binding on all parties...." *Id.*

On April 7, 2008, U.S. Parking received a letter from Mr. Gleason, President of Local Union No. 665, which referenced the hearing on March 19, 2008 "to determine the merits of a grievance filed by Mr. Kurtcu for back wages and benefits," and notified U.S. Parking that "a ruling was made that Mr. Kurtcu should be awarded $64,048." Kaplankiran Declaration, ¶17 and

- 4 -

Exhibit C. The letter further stated that, "[a]s this issue was presented as final and binding by the parties, we direct you to pay Mr. Kurtcu this amount. With this payment the matter will be closed." *Id.*

On April 9, 2008, the arbitrator rendered her written Decision and Award regarding plaintiff's grievance (the "Award"). Kaplankiran Declaration, ¶18. The Award is attached to the Kaplankiran Declaration as Exhibit D, and defendants request that the Court take judicial notice of the Award. *See* Defendant's Request for Judicial Notice, served and filed herewith. The Award concludes:

> The grievant shall receive $54,725 in wages, including overtime; $1,031 for the shifts he worked at ballgames; $6,000 for medical out-of-pocket expense; $2,292 for vacation, sick leave and holidays he was entitled to receive for a total of $64,048. The Employer will pay his pension benefits to the pension plan. There are no punitive damages awarded in this case.

Kaplankiran Declaration, ¶18 and Exhibit D, page 5.

On April 15, 2008, Mr. Kaplankiran hand-delivered a check in the amount of $50,628.97 ($64,048 minus applicable taxes the employer was obligated to withhold, as calculated by U.S. Parking's payroll service) to Mr. Kurtcu in full payment of the award. Kaplankiran Declaration, ¶19 and Exhibit E.

## IV.    ARGUMENT

### A.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

A complaint should be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).

#### i.    The Court May Consider The CBA, The Award And Records In The Arbitration Proceeding

As a general rule, the Court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1989); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir. 1986).

Defendants submit that, in ruling on this motion under Rule 12(b)(6), this Court may consider (1) the CBA, which is referenced in the Complaint; and (2) the Award, the written agreement confirming submission of the matter to binding arbitration, and notice of the award from the union, all records in the arbitration proceeding, in accordance with defendants' Request for Judicial Notice, served and filed herewith.

First, plaintiff may not avoid consideration of the CBA simply by failing to specifically identify it in his Complaint. In ruling on a motion to dismiss, a court may take judicial notice of a document if it is relied on in the complaint (regardless of whether it is expressly incorporated therein) and its authenticity is not disputed. *In re NorthPoint Comm. Group Inc., Sec. Litig.*, 221 F.Supp.2d 1090, 1095 (N.D.Cal. 2002); *see also Neilson v. Union Bank of California*, 290 F.Supp.2d 1101, 1114 (C.D.Cal. 2003)(taking judicial notice of contracts relied upon but not incorporated in the complaint). Plaintiff's complaint alleges that defendants failed to pay him the "regular hourly rate of pay established by contract" and amounts "due under the contract." Complaint, ¶¶11-12. The "contract" referenced is the CBA (*see* Declaration of Orhan Kaplankiran in Support of Motion to Dismiss ("Kaplankiran Declaration"), ¶9). The Court may take judicial notice of and consider the CBA in ruling on the motion to dismiss.

Further, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "proceedings and determinations" in a prior related litigation in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). "Materials from a proceeding in another tribunal are appropriate for judicial notice." *Biggs v. Terhune*, 334 F.3d 910, 916 (9th Cir. 2003); *Papai v.*

*Harbor Tug and Barge Co.,* 67 F.3d 203, 207 (9th Cir. 1995) (taking judicial notice of a decision

and order of an Administrative Law Judge); *see also Chrzanowski v. Lichtman*, 884 F.Supp. 751,

756 (W.N.N.Y. 1994) (taking judicial notice of small claims judgment in order to evaluate

defendants' Rule 12(b)(6) motion), *citing Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d

Cir. 1991). Here, the Court may take judicial notice of the binding arbitration award rendered in

plaintiff's favor, of the agreement, signed by plaintiff, to submit the dispute to binding

arbitration, and of the letter from the union providing notice of the award, all as records in the

arbitration proceeding.

ii.    Plaintiff's Claims In This Case Are Precluded By The Award

"Res judicata or claim preclusion prevents relitigation of prior causes of action on the

basis that the claims were or should have been raised in the original action." *Chrzanowski v.

Lichtman*, 884 F.Supp. at 756, *citing Index Fund, Inc. v. Hagopian*, 677 F.Supp. 710, 715

(S.D.N.Y. 1987) (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d

210 (1979). Two lawsuits are based on the same claim if a different judgment in the later action

would destroy or impair the rights or interests established by the earlier action. *Chrzanowski v.

Lichtman*, 884 F.Supp. at 756; *Winters v. Lavine*, 574 F.2d 46, 56 (2d Cir. 1978). "Thus,

whatever legal theory is advanced, when the factual predicate upon which the claims are based

are substantially identical, the claims are deemed to be duplicative for purposes of *res judicata*."

*Chrzanowski v. Lichtman*, 884 F.Supp. at 757, quoting *Berlitz School of Languages of America,

Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980). Res judicata bars subsequent claims

arising from the same factual situation even if they are brought under a different legal theory.

*Kougasian v. TMSL, Inc.,* 208 Fed.Appx. 561 (9th Cir. 2006).

In this case, plaintiff alleged in the labor arbitration proceeding that defendant U.S.

Parking had "incorrectly paid wages and benefits since he started working for the Employer on

February 28, 2003." Award, page 3 (Exhibit D to Kaplankiran Declaration). The Award notes

that plaintiff's time cards and pay slips were analyzed in determining the amount of the award.

*Id.* The award was rendered, and U.S. Parking was directed by the union to pay plaintiff the

amount of the award.  Kaplankiran Declaration, Exhibit C.  It did so on April 15, 2008.

Kaplankiran Declaration, ¶19.  Here the claims in the arbitration and this case clearly arose from

the same factual situation and "the factual predicate upon which the claims are based are

substantially identical" (*Chrzanowski v. Lichtman*, 884 F.Supp. at 757).  Thus the claims made by

plaintiff in his labor arbitration and in his Complaint in this case should be deemed duplicative

for purposes of *res judicata*.   Furthermore, given that plaintiff was awarded an amount in excess

of his original grievance[1] and was paid that amount by defendant U.S. Parking, a different

judgment in this action would clearly "destroy or impair the rights or interests established by the

arbitration award." *Id.*

In *Kemp v. Cal. Fed'n of Teachers*, 2002 U.S. Dist. LEXIS 24308, 11-13 (N.D. Cal.

2002), Magistrate Judge Larson granted defendants' Rule 12(b)(6) motion to dismiss where

plaintiff had gone through a labor arbitration provided for in a collective bargaining agreement

and had prevailed.  The *Kemp* case thus involved facts strickingly similar to the case now before

this Court to hold:

> In the case at bar, the collective bargaining agreement between Plaintiff's union
> and his employer required that all claims regarding employment be submitted to
> the grievance procedure and arbitration. Plaintiff in fact availed himself of this
> procedure, prevailed, and received an award of two months' back pay. This
> decision and the award were confirmed by the Alameda County Superior Court.
> Therefore, Plaintiff has no claim remaining to bring before this court and his
> complaint must be dismissed without leave to amend.

*Kemp* at 12.

*Kemp* involved statutory claims of discrimination and the Court found that:

> In the case at bar, the collective bargaining agreement required Plaintiff to submit
> to arbitration any claims of discrimination in his employment with Defendants, the
> same claims articulated in his Complaint. *Wright v. Universal Maritime Service
> Corp.*, 525 U.S. 70, 80, 142 L. Ed. 2d 361, 119 S. Ct. 391 (1998); *Safrit v. Cone
> Mills Corp.*, 248 F.3d 306, 308 (4th Cir. 2001). Consequently, res judicata requires
> this court to refrain from re-adjudicating Plaintiff's claims.

---

[1]    In fact, plaintiff was awarded every sum that he requested, other than damages for
physical and mental injuries, which the arbitrator advised him would be covered by workman's
compensation if they occurred on the job, and punitive damages, which the arbitrator considered
but declined to award.  *See* Award, page 5 (Exhibit D to Kaplankiran Declaration).

> Because the issue of his right to employment has already been adjudicated, Plaintiff is also collaterally estopped from bringing litigation in this court alleging the same claims as violations of his civil rights under federal statutes. *Strozier v. General Motors Corp.*, 635 F.2d 424 (5th Cir. 1981).

*Kemp* at 12-13. In reaching this result, Magistrate Judge Larson relied on the Ninth Circuit's ruling in *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994 (9th Cir. 2002), which applied the decision of the U.S. Supreme Court in *Circuit City Stores v. Adams*, 532 U.S. 105, 149 L. Ed. 2d 234, 121 S. Ct. 1302 (2001), to find that the plaintiff's claims for discrimination under Title VII and the ADA were validly subject to the arbitration provision of the collective bargaining agreement between his union and his employer, and that he was therefore precluded from bringing his claims on the basis of res judicata and collateral estoppel.[2]

The Kemp decision also relied on the Fourth Circuit's ruling in *Safrit v. Cone Mills Corp.*, 248 F.3d 306, which analyzed the reasoning behind giving res judicata effect to arbitrations conducted pursuant to collective bargaining agreements:

> An agreement to arbitrate statutory claims is part of the natural tradeoff that a union must make in exchange for other benefits. As Judge Widener wrote for the court in *Austin v. Owens-Brockway Glass Container, Inc.*, a "union has the right and duty to bargain for the terms and conditions of employment." *Austin*, 78 F.3d 875, 885 (4th Cir. 1996). And since the right to arbitrate is a term or condition of employment, the union may bargain for this right as well. *See id.* (citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957)). The collective bargaining process permits unions to waive the right to strike "and other rights protected under the National Labor Relations Act." *Id.* (citing *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 705, 75 L. Ed. 2d 387, 103 S. Ct. 1467 (1983)). Indeed, no reason exists for distinguishing between "a union bargaining away the right to strike and a union bargaining for the right to arbitrate." *Austin*, 78 F.3d at 885. In both cases, the union and its members decide that the price of giving up the right to strike or the right to litigate is worth the benefits that they will receive in return.

---

[2]    The Supreme Court has declared that public policy favors the resolution of labor disputes through arbitration. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960). California law also recognizes the *res judicata* effect of labor arbitrations. *Kelly v. Vons Companies, Inc.* 67 Cal.App.4th 1329 (1998).

> To redact one clause from the CBA would in effect alter the agreement reached during the often-difficult collective bargaining process. And there is no claim that Safrit's union failed to adequately represent its members during the course of negotiations with Cone Mills or during the grievance process.

*Safrit v. Cone Mills Corp.*, 248 F.3d 306, 308-309 (4th Cir. 2001).

Similarly, in this case, the labor arbitration process conducted pursuant to the CBA governing plaintiff's employment with defendant U.S. Parking should be given preclusive effect. The claims of this plaintiff must be dismissed because he chose to avail himself of the labor arbitration process, <u>won</u> and was <u>paid</u>. *See Kemp v. Cal. Fed'n of Teachers*, 2002 U.S. Dist. LEXIS 24308, 11-13. An employee who took advantage of a labor arbitration process, won and was paid an award far in excess of even his demand up to the time of the final, binding hearing, should not be permitted to now pursue a court action encompassing the same claims, and arising from the same identical facts.

B.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY JUDGMENT

In the alternative, in the event that the Court finds that the evidence submitted by defendants in support of their motion falls outside the confines of Rule 12(b)(6), defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

DATED:  April 28, 2008                    Respectfully submitted,


                                          /s/
                                          DOUGLAS R. SCHWARTZ
                                          PETRA M. REINECKE
                                          Attorneys for Defendants
                                          U.S. PARKING, INC. and
                                          CIHAT ESREFOGLU

1    DOUGLAS R. SCHWARTZ (State Bar No. 98666)
     PETRA M. REINECKE (State Bar No. 154482)
2    SCOTT R. LOVERNICK (State Bar No. 233755)
     SCHWARTZ & CERA LLP
3    44 Montgomery Street, Suite 3850
     San Francisco, California 94104
4    Telephone: (415) 956-2600
     Facsimile: (415) 438-2655

5

6    Attorneys for Defendants
     U.S. PARKING, INC. and
     CIHAT ESREFOGLU

7

8                 UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

9

10   IBRAHIM E. KURTCU, on behalf of     )   Case No. C 08-02113-WHA
     himself and others similarly situated,    )
11                         )   **REQUEST FOR JUDICIAL NOTICE IN**
              Plaintiff,       )   **SUPPORT OF MOTION TO DISMISS**
12                         )   **FOR FAILURE TO STATE A CLAIM**
           vs.          )   **UPON WHICH RELIEF CAN BE**
13                         )   **GRANTED PURSUANT TO FEDERAL**
     U.S. PARKING, INC., a corporation;    )   **RULE OF CIVIL PROCEDURE 12(B)(6)**
14   CIHAT ESREFOGLU, an individual; and   )   **OR, IN THE ALTERNATIVE, FOR**
     DOES 1 through 10, inclusive,      )   **SUMMARY JUDGMENT**
15                         )
              Defendants.      )   **[Motion to Dismiss, Declaration of Orhan**
16                         )   **Kaplankiran and Proposed Order filed**
                        )   **separately]**
17                         )
                        )
18                         )   DATE:   June 5, 2008
                        )   TIME:   8:00 a.m.
19                         )   CTRM: 9, 19th Floor

20        PLEASE TAKE NOTICE that defendants U.S. Parking, Inc. and Cihat Esrefoglu, by and

21 through their attorneys, hereby submit their Request for Judicial Notice in support of their motion

22 to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted or, in

23 the alternative, for summary judgment.

24        Federal Rule of Evidence 201(b) provides that the Court may take judicial notice of facts

25 that are "not subject to reasonable dispute" because they are "capable of accurate and ready

26 determination by resort to sources whose accuracy cannot reasonably be questioned." Defendants

27 respectfully request that the Court take judicial notice pursuant to Rule 201 of the following:

28

1.     A Collective Bargaining Agreement entitled *Master Agreement and Area Standards, Employment Practices in the Parking and Garage Industry, San Francisco and San Mateo Counties, By and Between Teamsters Automotive and Allied Workers, Local Union No. 665 and the Signatory Employers, December 1, 2003 through November 30, 2008* (hereinafter "CBA"). A true and correct copy of the CBA is attached hereto as Exhibit A.

2.     A written agreement dated March 19, 2008 "to submit to the arbitrator the grievance of Mr. Ibrahim E. Kurtcu vs. U.S. Parking, Inc." for "final and binding" decision. A true and correct copy of the agreement is attached hereto as Exhibit B.

3.     A letter dated April 7, 2008, from Mark Gleason, President of Local Union No. 665, regarding the arbitration hearing on March 19, 2008. A true and correct copy of the letter is attached hereto as Exhibit C.

4.     A written Decision and Award dated April 9, 2008, by Arbitrator Ruth Carpenter in the labor arbitration matter between (employer) U.S. Parking, Inc. and (union) Teamsters Local 665, on behalf of grievant Irbahim E. Kurtcu. A true and correct copy of the Decision and Award is attached hereto as Exhibit D.

These documents constitute facts not reasonably subject to dispute which may properly be considered by the Court in considering defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL ARGUMENT

The Court may take judicial notice of a "document the authenticity of which is not contested, and upon which plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *see Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002) (under the Ninth Circuit's "incorporation by reference" rule, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment). This includes documents that are integral to plaintiff's claim but not explicitly incorporated in the complaint. *Parrino*, 146 F.3d at 706; *In re NorthPoint Comm. Group Inc., Sec. Litig.*, 221 F.Supp.2d 1090, 1095 (N.D.Cal. 2002)("In ruling on a motion to dismiss, a court may take judicial notice of a document if it is relied on in the complaint (regardless of whether it is expressly incorporated

therein) and its authenticity is not disputed"); see also *Neilson v. Union Bank of California*, 290 F.Supp.2d 1101, 1114 (C.D.Cal. 2003)(taking judicial notice of contracts relied upon but not incorporated in the complaint).

Plaintiff may not avoid consideration of the CBA simply by failing to specifically identify it in his Complaint.  Plaintiff's complaint alleges that defendants failed to pay him the "regular hourly rate of pay established by contract" and amounts "due under the contract."  Complaint, ¶¶11-12.  The "contract" referenced is the CBA (see Declaration of Orhan Kaplankiran in Support of Motion to Dismiss ("Kaplankiran Declaration"), ¶9).  The Court may take judicial notice of and consider the CBA in ruling on the motion to dismiss.

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "proceedings and determinations" in a prior related litigation in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).  The Court may take judicial notice of an application and award rendered in an earlier proceeding.  "Materials from a proceeding in another tribunal are appropriate for judicial notice." *Biggs v. Terhune*, 334 F.3d 910, 916 (9th Cir. 2003); *Papai v. Harbor Tug and Barge Co.*, 67 F.3d 203, 207 (9th Cir. 1995) (taking judicial notice of a decision and order of an Administrative Law Judge); *see also Chrzanowski v. Lichtman*, 884 F.Supp. 751, 756 (W.N.N.Y. 1994) (taking judicial notice of small claims judgment in order to evaluate defendants' Rule 12(b)(6) motion), *citing Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  Here, the Court may take judicial notice of the binding arbitration award rendered in plaintiff's favor, and the records of that arbitration proceeding, including the agreement to submit to binding arbitration, and the letter from the union notifying defendant U.S Parking of the arbitration award.

DATED:  April 28, 2008                    Respectfully submitted,


                                          /s/
                                          DOUGLAS R. SCHWARTZ
                                          PETRA M. REINECKE
                                          SCOTT R. LOVERNICK
                                          Attorney for Defendants
                                          U.S. PARKING, INC. and
                                          CIHAT ESREFOGLU

DOUGLAS R. SCHWARTZ (State Bar No. 98666)
PETRA M. REINECKE (State Bar No. 154482)
SCOTT R. LOVERNICK (State Bar No. 233755)
SCHWARTZ & CERA LLP
44 Montgomery Street, Suite 3850
San Francisco, California 94104
Telephone:  (415) 956-2600
Facsimile:  (415) 438-2655

Attorneys for Defendants
U.S. PARKING, INC. and
CIHAT ESREFOGLU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IBRAHIM E. KURTCU, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. PARKING, INC., a corporation; CIHAT ESREFOGLU, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. C 08-02113-WHA<br><br>**DECLARATION OF ORHAN KAPLANKIRAN IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br><br>**[Motion to Dismiss, Request for Judicial Notice and Proposed Order filed separately]**<br><br>DATE:  June 5, 2008<br>TIME:  8:00 a.m.<br>CTRM:  9, 19th Floor |

I, ORHAN KAPLANKIRAN, declare:

1.     I am employed by U.S. PARKING, INC., a defendant in this matter, as Vice President of Operations and Human Resources.  I make this declaration in support of defendants' motion to dismiss Plaintiff's Complaint in this matter for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment in their favor, and also in support of the Request for Judicial Notice filed by defendants in conjunction therewith.

1   2.  I make this declaration of my own personal knowledge and, if called upon to do so,

2 could and would testify competently as stated herein.

3   3.  U.S. Parking is a California corporation which operates a number of parking lots in

4 San Francisco and one lot in Oakland.  The business leases parking lots from the City and

5 manages or operates them.  U.S. Parking was founded in 1995 by defendant Cihat Esrefoglu, a

6 Turkish immigrant.  From its modest beginnings operating one parking lot, it has expanded in the

7 last 12 years to employ approximately 90 people, most of them Turkish and other immigrants

8 getting their start in the United States.

9   4.  Plaintiff, an immigrant from Turkey, has been employed by U.S. Parking as a

10 parking lot attendant since February 28, 2003.

11   5.  I have been employed by U.S. Parking as Vice President of Operations and Human

12 Resources since 2003.  As part of my job duties in that capacity, I am responsible for

13 employment matters, including grievances or complaints by employees and the resolution of

14 those claims.

15   6.  Since 2003, U.S. Parking's parking lot attendant employees have been members of

16 the local union, the Teamsters Automotive and Allied Workers, Local Union No. 665 ("Local

17 Union No. 665").

18   7.  I am informed and believe that plaintiff became a member of Local Union No. 665

19 on or about March 1, 2006.

20   8.  U.S. Parking is a signatory to a Collective Bargaining Agreement entitled *Master*

21 *Agreement and Area Standards, Employment Practices in the Parking and Garage Industry, San*

22 *Francisco and San Mateo Counties, By and Between Teamsters Automotive and Allied Workers,*

23 *Local Union No. 665 and the Signatory Employers, December 1, 2003 through November 30,*

24 *2008* (hereinafter "CBA").  A true and correct copy of the CBA is attached hereto as Exhibit A.

25 The CBA is the "contract" mentioned in plaintiff's Complaint in this case.

26   9.  The CBA states that it covers "the employment of persons coming under the

27 jurisdiction of the Union in San Francisco and San Mateo Counties.  CBA, Preamble at page 1.

28 The CBA further provides that: "The Employer hereby recognized the Union as the exclusive

1    collective bargaining representative of all employees employed by the Employer to perform work

2    in the following classifications: ... Attendants ...." CBA, §1.

3       10.    The CBA contains a grievance procedure for "all" "complaints or disputes"

4    between the employee and the employer, and "[a]ll money claims against the employer." CBA

5    §29 (Exhibit A). The grievance process is a three-tier process. First, settlement is attempted

6    between the union representative and the employer. CBA §30(A). Then, the CBA provides,

7    "[a]ll complaints concerning a violation of this Agreement, all questions or disputes concerning

8    the meaning, interpretation, application or enforcement of this Agreement which are not settled in

9    the manner above provided ... shall be referred to a Board of Adjustments .... [or] to an impartial

10   mediator ... [who] will issue a binding recommendation to the parties. Either party to the

11   mediation may reject the non-binding recommendation by demanding Arbitration...." CBA

12   §30(B).

13      11.    The final tier of the grievance procedure provided for in the CBA is as follows:

14        In the event that the Adjustment Board is unable to reach a decision by majority or
          unanimous vote on any such matter, or a party is dissatisfied with the non-binding
15        recommendation of the mediator, the party may bring the matter to an impartial
          arbitrator by demanding arbitration in writing to the Federal Mediation and
16        Conciliation Service within ten (10) business days of receiving notice from the
          Board of Adjustment or the mediator. The decision of the impartial arbitrator shall
17        be final and binding. Each side shall pay one-half the charges of such arbitrator.

18   CBA §30(D).

19      12.    On or about October 11 or 12, 2007, plaintiff filed a grievance with Local Union

20   No. 665. After the filing of plaintiff's grievance, Ernie Yates, the Secretary Treasurer of Local

21   Union No. 665, contacted U.S. Parking regarding plaintiff's grievance. I spoke to Mr. Yates

22   regarding the matter, and was informed that Plaintiff's grievance alleged that he was incorrectly

23   paid wages and benefits since he started working for U.S. Parking on February 28, 2003.

24      13.    Mr. Esrefoglu and I met with Mr. Yates on or about October 17, 2207 in an

25   attempt to resolve plaintiff's grievance.

26      14.    When we were unable to resolve the grievance, plaintiff and U.S. Parking mediated

27   the dispute on October 26, 2007. When we failed to resolve the dispute, the matter was

28   submitted by the parties to binding arbitration, as provided for in section 30 of the CBA.

15.    On March 19, 2008, the arbitration hearing was held in Daly City before Ruth Carpenter, an arbitrator with the Federal Mediation and Conciliation Service. I attended the hearing on behalf of U.S. Parking. Plaintiff was also present, as was Plaintiff's union representative, Mark Gleason, the President of Local Union No. 665.

16.    Before the hearing started, plaintiff Ibrahim Kurtcu, Mr. Gleason on behalf of the union, and I on behalf of U.S. Parking, signed a document agreeing "to submit to the arbitrator the grievance of Mr. Ibrahim E. Kurtcu vs. U.S. Parking, Inc." This was what we had previously agreed to do. The agreement, a true and correct copy of which is attached hereto as Exhibit B, further stated, immediately above the signature lines, that "the decision of the impartial arbitrator shall be final and binding on all parties...."

17.    On April 7, 2008, I received a letter from Mr. Gleason, President of Local Union No. 665, which referenced the hearing on March 19, 2008 "to determine the merits of a grievance filed by Mr. Kurtcu for back wages and benefits," and notified U.S. Parking that "a ruling was made that Mr. Kurtcu should be awarded $64,048." A true and correct copy of the letter is attached hereto as Exhibit C. The letter further stated that, "[a]s this issue was presented as final and binding by the parties, we direct you to pay Mr. Kurtcu this amount. With this payment the matter will be closed."

18.    On April 9, 2008, the arbitrator rendered her written Decision and Award regarding plaintiff's grievance (the "Award"). I received a copy of the Award, which is attached hereto as Exhibit D, on April 10, 2008. The Award concludes:

> The grievant shall receive $54,725 in wages, including overtime; $1,031 for the shifts he worked at ballgames; $6,000 for medical out-of-pocket expense; $2,292 for vacation, sick leave and holidays he was entitled to receive for a total of $64,048. The Employer will pay his pension benefits to the pension plan. There are no punitive damages awarded in this case.

Award, Exhibit D, page 5.

19.    On April 15, 2008, I personally handed an envelope containing a check in the amount of $50,628.97 ($64,048 minus applicable taxes the employer was required to withhold, as calculated by U.S. Parking's payroll service) to Mr. Kurtcu in full payment of the award. A true

1    and correct copy of the check and the cover letter I provided to Mr. Kurtcu with the check, are

2    attached hereto as Exhibit E.

3        I declare under penalty of perjury under the laws of the State of California that the

4    foregoing is true and correct and executed this 28th day of April, 2008, at San Francisco,

5    California.

6

7

     ORHAN KAPLANKIRAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ORHAN KAPLANKIRAN IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT
Case No. C 08-02113-WHA

# EXHIBIT A

**Teamsters Automotive and Allied Workers, Local Union No.665**

**Affiliated with**

**Teamsters Joint Council No.7**

**International Brotherhood of Teamsters, AFL-CIO**

| Main Office | South Bay Office |
|---|---|
| 295 89th Street, Suite 306 | 1452 North 4th Street, Suite B |
| Daly City CA 94015 | San Jose CA 95112 |
| Ph. 650-991-2102 | Ph. 408-487-0590 |
| FAX 650-991-1950 | FAX 408-487-0594 |

Web Site Address: www.teamsters665.org

*Your Retirement Benefits*
Western Conference of Teamsters Pension Trust
1-800-845-4162

Supplemental Income 401 (k) Plan
1-800-477-3829

*Your Health Benefits*
Bay Area Automotive Group Welfare Fund
1-800-267-3232

Dear Member:

Make sure you are kept up-to-date on improvements and changes in your benefits, and in your Union. If you are not receiving information in the mail, phone in an address change to the Union and to the above benefits providers.

Fraternally,

Ernie Yates
Secretary Treasurer

Mark Gleason
President



# Master Agreement and Area Standards
## Employment Practices in the
## Parking and Garage Industry
### San Francisco and San Mateo Counties

**By and Between**

**Teamsters Automotive and Allied Workers,**

**Local Union No. 665**

**and the**

**Signatory Employers**

December 1, 2003 through
November 30, 2008

# MASTER AGREEMENT

### TABLE OF CONTENTS

| SECTION | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Recognition | 1 |
| 2 | Hiring | 1 |
| 3 | Union Membership | 2 |
| 4 | Seniority | 3 |
| 5 | Vacations | 4 |
| 6 | Health & Welfare | 6 |
| 7 | Teamsters Pension Plan | 7 |
| 8 | 401(K) Plan | 9 |
| 9 | Holidays | 10 |
| 10 | Sick Leave | 11 |
| 11 | Hospital Leave Pay | 12 |
| 12 | Part-Time / Casual | 12 |
| 13 | Rates of Pay | 14 |
| 14 | Work Week — Hours & Overtime | 15 |
| 14 | Maximum Rate | 16 |
| 14 | Forepersons | 16 |
| 14 | No Reduction | 16 |
| 14 | Hours Guarantees | 16 |
| 15 | Duties | 17 |
| 16 | Accident & Sickness Disability Plan | 17 |
| 17 | Leaves of Absence (Paid) | 18 |
| 17 | Jury Duty, Funeral Leave, Time off for Voting | 18 |
| 18 | Leaves of Absence (Unpaid): Military Service | 19 |
| | Maternity, Alcohol/Drug Rehabilitation, Personal, | |
| | Parental, Medical, School Visits | 19 |
| 19 | No Strikes or Work Stoppages | 21 |
| 20 | General Provisions: Representatives, D.R.I.V.E., | |
| | Commuter Checks, Employee Parking, Meetings, | |
| | Uniforms, Conditions, Partnerships, Work Rules, | |
| | Lie Detector Tests, Payday, Responsibility, | |
| | Working Managers, Pay Upgrade, Commissions, | |
| | Subcontractors, Acts of God, S.M. County Rate | 21 |
| 21 | Technological Change | 24 |
| 22 | Safety | 24 |
| 23 | Management Rights | 24 |
| 24 | Compensatory Injuries | 24 |
| 25 | Change of Ownership | 25 |

# MASTER AGREEMENT

### TABLE OF CONTENTS

| SECTION | DESCRIPTION | PAGE |
|---|---|---|
| 26 | Change of Management, Location | 25 |
| 27 | Drivers License | 26 |
| 28 | Warning Notice | 26 |
| 29 | Time Limit for Filing Grievance | 27 |
| 30 | Grievance Procedures, Arbitration | 27 |
| 31 | Marketing Conditions | 29 |
| 32 | Savings | 29 |
| 33 | Expiration and Revision | 30 |
| Appendix A | Work Rules | 31 |

# GARAGE AND PARKING

## LOT AGREEMENT

**December 1, 2003 to November 30, 2008**

**PREAMBLE**

Agreement, by and between the *Jurisdictional Operators of Parking Facilities*, referenced in Section 33 of this Agreement and party of the first part, hereinafter referred as the Employer, and **Teamster Automotive & Allied Workers, Local Union No. 665**, affiliated with the International Brotherhood of Teamsters, hereinafter referred to as the Union, covering the employment of persons coming under the jurisdiction of the Union in San Francisco and San Mateo Counties.

## SECTION 1. RECOGNITION:

The Employer hereby recognized the Union as the exclusive collective bargaining representative of all employees employed by the Employer to perform work in the following classifications: Janitorial, Cleaning, Washing, Polishing, Lubrication, Rent-Car Service, Parking Vehicles, Cashiers, Attendants, Checking Coin Boxes, Non-Attendant Parking Lot Checking, Daily Ticket Audit, Traffic Directors, Shuttle Drivers, and all other incidental duties.

It is agreed that the signing of this Agreement shall constitute a recognition of the Union, and it is further agreed that no member shall be discharged for activity in or representing their Union.

All employees described above shall be known by the term "Garage Employees."

Persons not covered by this Agreement, including non-bargaining unit employees of the Employer, shall not under any normal circumstances perform any work or services covered by this Agreement.

## SECTION 2. HIRING:

Only members in good standing in the Union shall be retained in employment. For the purposes of this section, "members in good standing" shall be defined to mean employee members of the Union who tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

All employees covered by this Agreement shall become members of the Union within thirty-one (31) days from the effective date of this Agreement or within thirty-one (31)

1

Case 3:08-cv-02113-WHA   Document 4-3   Filed 04/28/2008   Page 19

days from the date of employment, whichever is later, and shall remain members of the Union in good standing as a condition of continued employment.

The Employer shall require new employees to obtain a referral from the Union before starting to work, it being the Employer's responsibility for any violation of this Section in the Agreement. The Employer shall pay a $100.00 fine per day and per violation, to be disbursed by the Union, but this fine shall be subject to the grievance procedure in the Agreement.

The Employer shall be the judge of the competency and fitness of the employee for all purposes, including hiring, promotion, and demotion. When an employee is engaged outside of the Union office, the employee shall be required to obtain a referral from the Union before starting to work.

**PROBATION PERIOD:** Employees hired after the ratification of this Agreement shall be on probation for the first ninety (90) calendar days of employment. New employees terminated by the Employer during the ninety (90) day probationary period shall not be subject to the grievance procedure. Wages and working conditions in the contract shall apply to employees during the probationary period.

**NON-DISCRIMINATION:** There shall be no discrimination in hiring, promotion, or other aspects of employment, because of age, sex, race, creed, color, national origin, physical handicap, marital status or sexual orientation. No employee shall be discriminated against by the Employer for living up to and observing the provisions of this Agreement. The Employer agrees to promote diversity in hiring and promotion within the bargaining unit.

**SECTION 3. UNION MEMBERSHIP:**

Membership in the Union on or after thirty-one (31) days following the beginning of employment, or the effective date of this Agreement, whichever is later, shall be a condition of employment to the extent consistent with the law.

Upon satisfactory proof from the Union, the Employer agrees to suspend or discharge an employee who fails to make application for and complete membership in the Union on, or alternatively, fails to tender initiation fees and dues uniformly required as a condition of acquiring or retaining membership. The Union shall hold the Employer harmless from any and all liability.

**COST OF HIRING:** The Employer agrees to pay the cost of medical examination and bonding fees if required. The Employer shall pay employment agency fees if it or its agent specifically order employees from employment agencies.

The Union may designate an individual to serve as shop steward. There shall be no discrimination against nor preferential treatment for purposes of layoff or recall of the steward because of Union activity.

The Employer at the request of the Union is to deduct from the wages of employees, membership dues (and initiation fees) of the Union, and promptly transmit such funds to the Union; provided, that the Employer has received from each employee, on whose account such deductions are made, a written assignment which shall be irrevocable for a period of more than one (1) year, or beyond the termination date of the applicable collective bargaining agreement, whichever occurs sooner.

**SECTION 4. SENIORITY:**

A. _Definition._ For the purpose of this Agreement, seniority is defined as time spent on the active payroll or actively at work for the Employer at the facility covered by this Agreement on a continuous basis. Any employee transferred to any facility of his or her Employer will carry with him or her all seniority heretofore established.

B. _Application._ When it is necessary to increase or decrease the number of employees, the principle of seniority shall be observed. The last person hired shall be the first person laid off and the last laid off shall be the first rehired. The rule of seniority of employees covered by this Agreement shall apply only within each Employer and shall prevail on different jobs providing the senior employee is qualified to fill the job of the junior employee. The rule of seniority shall also apply to vacation periods. Seniority shall also apply to shift and holiday preference as long as the senior employee is capable and qualified to perform the work.

C. _Seniority Rights._ Company wide seniority rights shall apply to layoffs, reduction in hours, location changing from one to another and vacation entitlement.

D. _Open Job._ As additional help is needed at an individual location, employees in seniority order may be given the opportunity to fill such open job, and hours provided they have applied to the Employer and providing the employee is capable of performing such work as determined by the Employer.

Seniority shall not prevent the Employer from moving any employee from one location to another location. There shall be at least one shift bid per year per location. An employee may exercise his or her seniority only at that location.

E. _Layoff._ Any employee at the time of layoff will, if recalled within one year, be credited with the amount of service credit he or she had at the time of layoff.

F. The seniority of an employee will be terminated for failure to report for work within five (5) working days after notice of recall is mailed by Certified Mail by the Employer, to the last address of the employee on the Employer's records.

4

Seniority shall also be broken for the following reasons: Voluntary quit, discharge for cause, retirement, absence from work from three (3) consecutive scheduled work days without proper report of and proof of reason for absence, the use of intoxicants or drugs during the hours of employment, or leaving his or her place of employment before the completion of his or her designated shift, unless permitted to do so by his or her Employer, layoff for a period exceeding the employee's seniority but not to exceed twelve (12) continuous months, suspension or revocation of driver's license, and not returning from a leave of absence.

The term "drug" means any substance or combination of substances, other than alcohol, which could so affect the nervous system, brain, or muscles of a person as to impair, to an appreciable degree, his or her ability to drive a vehicle or perform work in the manner that an ordinarily prudent and cautious person, in full possession of his or her faculties, using reasonable care, would drive a similar vehicle under like conditions.

## SECTION 5. VACATIONS:

Each employee having had one (1) year completed continuous service with his or her Employer shall receive a vacation of one (1) week with pay.

Each employee having had two (2) years' completed continuous service with his or her Employer shall receive a vacation of two (2) weeks with pay.

Each employee having had five (5) years' completed continuous service with his or her Employer shall receive a vacation of three (3) weeks with pay.

Each employee having had twelve (12) years' completed continuous service with his or her Employer shall receive a vacation of four (4) weeks with pay.

Each employee having had twenty (20) years' completed continuous service with his or her Employer shall receive a vacation of five (5) weeks with pay.

Each employee having had twenty-five (25) years' completed continuous service with his or her Employer shall receive a vacation of six (6) weeks with pay.

Employees who are entitled to a vacation may cash out up to 50% of his or her vacation each year, vacation shall not be carried over from year to year and must be taken or cashed out.

Upon obtaining the permission of the Employer, an employee may use an available vacation day in one (1) day increments, and/or he or she may take one (1) additional

week without pay to run consecutively with the paid week, if desired by the employee. Each eligible employee shall give at least two (2) weeks' advance notice of vacation time. Vacation periods shall be fixed between April 1st and October 21st, both dates inclusive, unless the employee affected desires his or her vacation outside that period. The Employer agrees to reply with confirmation within ten (10) working days of an employee's vacation request.

When a paid holiday falls within an employee's vacation, the employee shall receive an extra day's pay or an extra day of vacation with pay.

Vacation time may be split. An employee who splits his or her vacation may exercise his or her seniority rights for the initial vacation period, however, subsequent selection shall be made after all employees have made their initial selection. This applies to employees with two weeks or more vacation time. Vacation periods shall not be less than one week.

During the initial year of employment, all employees except those disqualified by the Part-time and Casual Section of this Agreement, shall be paid upon termination all unused vacation computed at the rate of one-twelfth (1/12) of one (1) weeks pay for each completed month.

All employees, except those disqualified by Section 12 (Part-Time, Casual And Seasonal Employees) of this Agreement, who have been employed thirteen (13) consecutive months or more, shall be paid upon termination any unused vacation pay computed at the rate of one-twelfth (1/12) of two (2) weeks pay for each completed month of employment in excess of twelve (12) months.

All employees eligible for three (3) weeks vacation after five (5) years of employment, except those disqualified by Section 12 (Part-Time, Casual And Seasonal Employees) of this Agreement, who have been employed sixty (60) consecutive months or more, shall be paid upon termination any unused vacation pay computed at the rate of one-twelfth (1/12) of three (3) weeks pay for each completed month of employment in excess of sixty (60) months.

All employees eligible for four (4) weeks vacation after twelve (12) years of employment, except those disqualified by Section 12 (Part-Time, Casual And Seasonal Employees) of this Agreement, who have been employed one hundred forty-four (144) consecutive months or more, shall be paid upon termination any unused vacation pay computed at the rate of one-twelfth (1/12) of four (4) weeks pay for each completed month of employment in excess of one hundred forty-four (144) months.

All employees eligible for five (5) weeks vacation after twenty (20) years of employment, except those disqualified by Section 12 (Part-Time, Casual And Seasonal Employees) of this Agreement, who have been employed two hundred forty (240) consecutive months or more, shall be paid upon termination any unused vacation pay computed at the rate of one-twelfth (1/12) of five (5) weeks pay for each completed month of employment in excess of two hundred forty (240) months.

All employees eligible for six (6) weeks vacation after twenty five (25) years of employment, except those disqualified by Section 12 (Part-Time, Casual And Seasonal Employees) of this Agreement, who have been employed three hundred (300) consecutive months or more, shall be paid upon termination any unused vacation pay computed at the rate of one-twelfth (1/12) of six (6) weeks pay for each completed month of employment in excess of three hundred (300) months.

## SECTION 6. HEALTH & WELFARE; MAJOR MEDICAL, DENTAL, ORTHODONTIA, PRESCRIPTION DRUG, VISION COVERAGE, ACCIDENT & SICK, LIFE INSURANCE

During the life of this Agreement, the Employer shall provide to the employees a Health and Welfare Fund and shall pay to the administrator of the Bay Area Automotive Group Welfare Plan the premium and administrative cost as provided for the appropriate Trust Agreement and amendments thereto.

All employees who have completed more than eighty-eight (88) hours of work in the previous month shall be eligible for coverage under such plan on the first of the month following completion of more than eighty-eight (88) hours of work.

Premiums must be paid by the tenth (10th) of the current month. Any Employer who failed to provide his or her employees with insurance benefits described above and who fails to pay the required premiums by the tenth (10th) day of the current month shall be held responsible for the benefits herein covered for the benefits which would have been provided by such insurance coverage. It shall not be a violation of this contract for the Union to take necessary economic action upon failure of the Employer pay premiums as above provided.

For each eligible employee, the Employer agrees to pay the premium and administrative cost of the Health and Welfare Plan, to include Indemnity Medical, Prescription Drug, Orthodontia, Life Insurance, Dental, Vision Coverage, Accident & Sick Coverage and Kaiser option. Full maintenance of benefits on major Medical, Dental, Orthodontia, Prescription Drug, Vision Coverage, Accident and Sick Coverage, and Life Insurance, shall be maintained. The premium cost of the Kaiser option may not increase over the Indemnity Medical rate.

It is understood that the Employer contributions referenced above may be increased as determined by the Trust Fund Agreement in order to maintain such benefits at the same level as presently in effect. The level of Health and Welfare benefits will be maintained.

The Employer agrees to abide by all terms and conditions of the Trust Fund Agreement creating such Health and Welfare Funds as they have been or may be modified, altered or amended, and all regulations and rules of the Board of Trustees of such Trust.

KAISER OPTION: There shall be a Kaiser option effective in each year of the contract. Each employee shall have the option of coverage under the Indemnity Medical Plan of the Bay Area Automotive Group Welfare Fund or the HMO Medical Plan offered by Kaiser Foundation Health Plan.

Each new employee shall make such selection at the time active employment starts. The Employer shall pay the Kaiser coverage in full and maintain benefits on future increases.

Contractual vacations and holidays shall be counted as time worked for the purposes of this Section.

New employees hired after the ratification of the 2003-2008 Agreement shall be eligible for medical benefits subject to the following schedule:

| | |
|---|---|
| 1st 5 months | No medical benefits |
| Next 6 months | Basic Major Medical, Kaiser, Prescription Drug & Life Insurance |
| Thereafter | Vision, Dental, Orthodontia, Accident and Sick |

Employers shall pay required premium regardless of the Benefits above.

All employees who work more than eighty-eight (88) hours in a month under B.A.A.G. Policy No. 4026, or equivalent benefits under a different carrier, with maintenance of benefits, parties agree to seek change in carriers if identical benefits can be obtained by the Board of Trustees. The Trust may increase or decrease and modify benefits.

Irrespective of the benefit entitlement set forth above, if an employee, prior to hiring by the Employer, has been covered under the Bay Area Automotive Group Welfare Fund within the last twelve (12) months prior to hiring, the employee shall be entitled to full benefits starting with the first month following the completion of more than eighty-eight (88) hours of work with this Employer.

## SECTION 7. PENSION PLAN:

The Employer shall pay into the Western Conference of Teamsters Pension Trust Fund on account of each employee performing bargaining unit work the sums as specified below, per hour, for each straight-time hour worked for such Employer. Such contributions must be made by the tenth (10th) day of each month. Contractual vacations and paid holidays shall be counted as time worked for the purpose of this Section.

The Employer will contribute an additional 16.5% to the Western Conference of Teamsters Program for Enhanced Early Retirement (PEER) 80. The contributions required to provide the Program for Enhanced Early Retirement will not be taken into consideration for benefit accrual purposes under the Plan. The additional contribution for PEER must at all times be 16.5% of the basic contribution and cannot be decreased or discontinued at any time.

PROBATIONARY EMPLOYEES: For probationary employees hired on or after December 1, 2003, the Employer shall pay an hourly contribution rate of $0.30 (including PEER/80) during the probationary period as defined in Section 2, but in no

case for a period longer than the ninety (90) calendar days from an employee's first date of hire. Contributions shall be made on the same basis as set forth in Section 7 of the Agreement.

After the expiration of the probationary period as defined in Section 2, but in no event longer than ninety (90) calendar days from the employee's first date of hire, the contribution shall be increased to the full contractual rate.

This provision is only applicable for regular full-time and regular part-time employees serving a probationary period.

This Probationary provision shall not be applicable to Seasonal and Casual employees as they are defined in the Agreement.

FULL CONTRACTUAL RATE:

12/1/2003- The total contribution including PEER 80 to the Western Conference of Teamsters Pension Trust Fund shall be $1.85 per hour. ($1.59 Basic Contribution plus $0.26 PEER rate.)

12/1/2005- The total contribution including PEER 80 to the Western Conference of Teamsters Pension Trust Fund shall be $1.97 per hour. ($1.69 Basic Contribution plus $0.28 PEER rate.)

12/1/2007- The total contribution including PEER 80 to the Western Conference of Teamsters Pension Trust Fund shall be $2.09 per hour ($1.79 Basic Contribution plus $0.30 PEER rate.)

The Employer agrees to abide by all terms and conditions of the Trust Agreement creating such pension funds as they have been or may be modified, altered or amended, and all regulations and rules of the Board of Trustees of such Trust.

The Employer further agrees to abide by and be bound by, the method of selection of the Trustees of such Trust as specified in such Trust.

Any firm which fails to pay into such Trust Fund the monthly sums above provided shall be held responsible to the employees herein covered for the benefits which would have been provided by such pension coverage, and such firm shall pay all cost of collecting delinquencies, including attorney fees.

the Trustees of the above Pension Trust fund find that an Employer has failed to make the monthly payments as above provided, it shall not be a violation of this Agreement for the Union to take necessary economic action.

## SECTION 8. SUPPLEMENTAL INCOME 401(K) PLAN:

The Employer shall contribute to the Supplemental Income 401(k) Plan Trust Fund, on account of each employee of the bargaining unit coming under the jurisdiction of the Union, for each straight-time hour worked, the sums to be effective and computed as follows.

The Employer shall pay into the Supplemental Income 401(k) Plan Trust Fund, on account of each employee performing bargaining unit work the sum of twenty cents (20 cents) per hour for each straight-time hour worked.

Employees working under this Agreement shall have Supplemental Income 401(k) Plan Trust Fund contributions, as outlined below:

| | | Effective 12/1/2006 |
| --- | --- | --- |
| First 3 mos. | No contribution | No contribution |
| Next 48 mos. | $0.05 (five cents) per hour | $.10 per hour |
| 52 months & Thereafter | $0.20 (twenty cents) per hour | $.25 per hour |

Contractual vacation and holidays paid for but not worked shall be considered as time worked for the purposes of this Section.

The Employer agrees to abide by all terms and conditions of the Trust Agreement creating such Trust Fund as it has been or may be modified, altered or amended, and to abide by all regulations and rules of the Board of Trustees of such Trust. The Employer further agrees to abide by, and be bound by the method of selection of the Trustees of such Trust as specified in said Trust Fund.

If the Employer fails to pay the Trust Fund the monthly sums above provided, the Employer shall be responsible to the employees herein covered for the benefits which would have been provided by such Supplemental Income 401(k) Plan coverage. The Employer shall pay all costs of collecting delinquencies, including attorney fees.

All contributions required to be made by this Section must be made by the tenth (10th) day of each month.

Employees may participate, and the Employer shall facilitate, the Supplemental Income 401(k) Plan, through the Union's administrator, on behalf of all members working under this Agreement.

The Employer will make or cause to be made payroll deductions from participating employee's wages in accordance with each employee's salary deferral election subject to compliance with ERISA and Tax Code Provisions. The Employer will forward the withheld sum to the Supplemental Income 401(k) Plan, or its successor, at such time as such form and manner as required pursuant to the plan trust and the paycheck deductions shall be before-tax contributions.

## SECTION 9. HOLIDAYS:

A. The following holidays when worked, shall be paid for at double the straight-time rate of pay: Rev. Martin Luther King, Jr. Birthday, President's Day, Independence Day, Employee's Birthday, Employee's Anniversary Date of Hire.

New Year's Day
M.L. King, Jr. Birthday
President's Day
Independence Day
Memorial Day
Labor Day

Thanksgiving Day
Christmas Day
Employee's Birthday
Employee's Date of Hire

Two (2) Floating Holidays

The following holidays when worked, shall be paid for at two and one-half (2-1/2) times the straight-time rate of pay: Labor Day, Thanksgiving Day, Christmas Day, and New Year's Day.

B. Employee's Birthday and Date of Hire: All employees will be allowed to be off on those days or alternatively any day may be taken during the week in which the affected holiday falls by mutual agreement between the employee and the Employer.

Floating Holidays: Floating Holidays to be mutually agreed upon by the Employer and each employee. At least two (2) weeks' advance notice of floating holiday to be given by employees.

C. When not worked, the above listed holidays shall be paid for at the rate of straight-time pay on the basis of hours normally worked, whether such day occurs within or outside an employee's workweek.

D. In order to be eligible for holiday pay when no work is performed, an employee must work to or be available for work on the last regular work day immediately prior to a holiday and on the first regular work day immediately following that holiday unless that employee can show a justifiable excuse to his or her Employer and the Union. An employee who fails to report as scheduled for work on a holiday shall forfeit his holiday pay unless that employee can show a justifiable excuse to his or her Employer and the Union. The Employer shall give at least one (1) week's notice to the employee of a contemplated shift change.

E. A paid holiday shall be considered a day worked, except that if a paid holiday falls on an employee's day off the regular contractual workweek shall prevail for the purposes of computing overtime in that week.

F. Employees required to work on the sixth (6th) consecutive day and when that sixth (6th) day falls on a negotiated HOLIDAY the employee will be paid two and one-half (2-1/2) times his or her regular salary.

I. When any of the above holidays fall on Sunday, the day observed by the State or the Nation shall be considered as the holiday.

K. Holidays during the first year of employment: New Year's Day, Rev. Martin Luther King, Jr. Birthday, President's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day.

During the second year of employment, add Employee's Birthday, two (2) floating holidays, and Employee's Date of Hire.

L. Whenever an employee is off the job for reasons of bona fide illness or injury for a period of up to thirty (30) days, the employee shall receive pay for any holiday falling within that time period. Employees must be on State Disability or Workers' Compensation to be eligible.

M. When any of the holidays are observed by the State or Federal Government on a different day, the Federal declaration shall take precedence and such day shall be observed as the holiday under the terms of this Agreement except Christmas Day, December 25, which will always be observed on the day it occurs.

N. The Employer shall post a Holiday schedule for each garage or lot with 2 weeks advance notice.

O. When two or more paid holidays fall within one day, the employee shall receive an extra day off with pay.

## SECTION 10. SICK LEAVE

A. Employees shall be credited with the full complement of eight (8) sick days as of January 1 of each year. An employee's final paycheck may be reduced by the number of days taken but not earned, in the event of resignation or termination. This garnishment of "unused" sick days shall reflect benefits otherwise earned under an accrual formula.

B. Sick leave will be payable on the second day if the employee is not hospitalized due to an accident or illness. If an employee has used all of his or her Hospital Pay, he or she will be eligible to use available sick pay on the first day if he or she is readmitted to the hospital and Hospital Pay is exhausted.

C. Sick leave is specifically payable for regularly scheduled workdays only at the employee's straight-time rate of pay.

D. For the initial period of service, prior to January 1st, an employee shall receive a pro-rata of his or her accumulated sick pay compensation, payable during the first payroll period in December.

E. Accumulation: During the life of this Agreement an employee upon termination for any reason, except proven theft, shall receive a pro-rata of accumulated sick pay compensation within seventy-two (72) hours.

F. Regular part-time employees who work less than twenty (20) hours a week shall not be eligible for sick pay compensation.

G. Regular part-time employees who work twenty (20) hours a week shall be eligible for pro-rata sick pay.

H. All employees presently employed for one year or more, by the same Employer, shall receive all unused sick pay, payable in cash at the accrued rate of pay during the first payroll period in December.

I. If any employee takes no days off sick in a year, the Employer shall grant one more days of sick pay in addition to the full yearly complement credit. This award shall be known as the "bonus" sick day. Employees also have two (2) options: Electing, in writing to the Employer by December 1st of each year, an additional vacation week with the employee paid the full complement for five (5) days off; or: Electing to accumulate up to a maximum of fifteen (15) days carried forward year to year at the accumulated rate of pay. Upon resignation or death, etc., an employee or his or her estate shall collect all unused sick pay.

J. Any employee found accepting or claiming benefits under this Section by reason of false statements or documents shall be subject to disciplinary action.

## SECTION 11. HOSPITAL LEAVE PAY:

Each full-time employee with one or more years of seniority shall receive three (3) days of Hospital Leave Pay each year. Such Hospital Leave Pay is to be used prior to the sick pay as described above. Such Hospital Leave Pay is to be used only when the employee is admitted overnight as a patient in a regularly constituted, fully equipped licensed Hospital. The employee must be hospitalized overnight. The employee must provide sufficient proof.

The employee will be paid his or her regular straight-time hourly rate of pay for eight (8) hours each day while confined in said hospital until he or she reaches the limits herein contained. The employee may accumulate unused Hospital Leave Pay for a maximum of nine (9) days, and there shall be no cash out of Hospital Leave Pay.

## SECTION 12. PART-TIME, CASUAL AND SEASONAL EMPLOYEES:

Regular part-time employees: Regular part-time employees are defined as those ordered to report to work at regularly specified intervals. Regular part-time employees shall be subject to the following:

1. Regular part-time employees shall be paid according to the time employed but must be guaranteed at least four (4) hours pay per shift, and overtime provisions, as contained in Section 14 of this Agreement.

2. Regular part-time employees who work less than twenty (20) hours per week shall not be eligible for vacation pay or for paid holidays when not worked. Benefits under the Health and Welfare, Major Medical, Orthodontia, Accident and Sick, Dental, Drug and Vision Coverage (Section 6) apply only after they have completed more than eighty-eight (88) hours of work in the preceding month of their employment.

3. Regular part-time employees are eligible for holiday pay and shall be paid on the basis of hours normally worked.

4. Regular part-time employees shall receive the applicable premium rate of pay for hours worked on any holiday named in this Agreement.

5. Regular part-time employees who normally work less than twenty (20) hours but sixteen (16) or more hours shall receive three hours pay for each holiday named in this Agreement for which he or she is scheduled to work but which is not worked because the Employer is closed for the holiday.

6. Regular part-time employees shall be given first consideration for full-time positions. The final selection to be based upon the employee's competency and qualifications to perform the work.

7. Regular part-time employees shall be guaranteed four and eight-hour shifts. All employees ordered to report or working four hours or less shall receive four hour's pay; all employees ordered to report or working more than four hours shall be limited to the straight-time working hours specified in Section 12.

8. Regular part-time employees who work sixteen (16) or more but less than twenty (20) hours shall receive the following vacations and pay therefore: Employees who have served one year of continuous service shall receive one week with pay at 1% of his or her annual earnings.

| | | |
|---|---|---|
| 2 years | 2 weeks with pay | 1.5% |
| 5 years | 3 weeks with pay | 2% |
| 12 years | 4 weeks with pay | 3% |
| 20 years | 5 weeks with pay | 4% |
| 25 years | 6 weeks with pay | 5% |

9. Separate seniority lists shall be maintained for all regular part-time employees. A part-time employee shall have seniority on a part-time list, but if a part-time employee becomes a full-time employee, he or she shall be credited with seniority for one-half the time worked as a part-time employee.

B. Casual Employees. Casual employees are defined as those who do not perform work on a regular basis. Casual employees who work less than twenty (20) hours per week shall not be eligible for vacation pay or for paid holidays when not worked. Benefits under the Health and Welfare, Major Medical, Orthodontia, Accident and Sick, Dental, Drug and Vision Coverage (Section 6) apply only after they have completed more than eighty-eight (88) hours of work in the preceding month of their employment.

C. Seasonal Employees - Seasonal employees are defined as employees hired for a period of May 1st through September 30th of each year. Seasonal employees are covered by all terms of this collective bargaining agreement except the Sections titled: Seniority; Vacations; Sick Leave; Leaves of Absence Paid; Leaves of Absence Unpaid; and Compensatory Injuries.

Seasonal employees shall be subject to the following:

1. A seasonal employee does not have seniority while he or she remains under the provisions of this Section, but if he or she becomes a full-time or part-time employee, he or she shall be credited with seniority from the first day worked.

No seasonal employee will hold a lead position and he or she may not be employed if full-time employees are laid off.

No seasonal employee shall begin employment without a clearance from the Union and the Employer shall inform the seasonal employee of this Agreement prior to commencement of assignments.

## SECTION 13. RATES OF PAY:

Journeymen shall receive hourly wage rates in accordance with the following schedule:

| 12/1/2003 | 12/1/2004 | 12/1/2005 | 12/1/2006 | 12/1/2007 |
|-----------|-----------|-----------|-----------|-----------|
| $17.50 | $18.00 | $18.55 | $19.10 | $19.65 |

The Union and the Employer shall, by mutual agreement, waive the above mentioned seasonal date, in order to provide for Special Events throughout the year. Employees hired outside the calendar seasons shall be known as Special Events employees, covered by the same provisions of this Section. Special Events employees shall be confined to employment at the agreed upon special event location.

B. Progression rate wages and scale:

An employee working under this Agreement as of December 1, 2003, and all employees hired after that date, shall be placed at the applicable progression rate based upon his or her seniority, and shall be credited with the full amount of seniority for purposes of advancement though the following wage progression:

|            | 12/1/03 | 12/1/04 | 12/1/05 | 12/1/06 | 12/1/07 |
|------------|---------|---------|---------|---------|---------|
| 0-6 mos.   | $10.50  | $10.82  | $11.14  | $11.47  | $11.81  |
| 6-12 mos.  | $11.00  | $11.36  | $11.70  | $12.05  | $12.41  |
| 12-18 mos. | $11.50  | $11.85  | $12.20  | $12.57  | $12.94  |
| 18-24 mos. | $12.00  | $12.36  | $12.74  | $13.12  | $13.51  |
| 24-32 mos. | $12.75  | $13.10  | $13.49  | $13.89  | $14.30  |

Employees on the 33rd month of employment shall become a Journeyman and be paid the Journeyman rate.

Progression rate employees shall not exceed twenty-five percent (25%) of the Journeyman workforce, provided that the Employer can establish by objective financial evidence that it may lose an account because its costs are substantially higher than other operators

who are prospective bidders, this limitation may be suspended by the Union for a particular facility pursuant to a Letter of Understanding.

When the 25% cap is exceeded the most senior non-journeyman shall be promoted to the Journeyman rate.

C. Supplemental Dues:

Effective on December 1, 2004, $.05 (five cents) shall be added to supplemental dues for a total of $.10 (ten cents) on account of each employee performing bargaining unit work. The sum of $.10 (ten cents) per hour for each straight time hour worked has been adjusted out of Section 13 of this Agreement.

D. "Graveyard" Shift Premium: Employees scheduled to work and/or reporting for work, with a starting time between 10:00 PM to 2:00 AM, shall receive a 10% premium in addition to their regular rate of pay, for the entire shift worked.

## SECTION 14. WORK WEEK, HOURS AND OVERTIME:

A. The workweek shall consist of forty (40) hours, five (5) consecutive workdays of eight (8) hours each to be worked within nine (9) hours.

B. No split work week unless approved by the Union in any one instance, by a Letter of Understanding.

C. Lunch Period: All employees shall be entitled to a minimum of one-half hour and a maximum of one hour lunch period. The lunch period shall commence not less than three and one-half (3 1/2) nor more than five and one-half (5 1/2) hours after the employee's starting time, except where otherwise agreed by the Employer and employee.

D. The Employer shall give at least one (1) week's notice to the employee of any contemplated shift change. This provision can be waived by mutual consent of the Employer and employee.

E. All work performed in excess of eight (8) hours per day and/or five (5) days per week shall be paid for at the rates specified in Section 13 of this Agreement. Overtime must be paid by cash or check and shall not be traded for time off.

F. All work performed in excess of eight (8) hours per day and/or forty (40) hours per week shall be paid for at the rate of time and one-half (1 1/2) of the prescribed rate. Time worked on the sixth (6th) consecutive day of any one week shall be paid at the rate of one and one-half (1 1/2) of the prescribed rate. Time worked on the seventh (7th) consecutive day of any one week shall be paid at the rate of double (2 times) the prescribed rate.

G. All time worked in excess than twelve (12) hours in any one work day shall be paid for at double (2 times) the employee's rate of pay.

straight-time rates based on the rate applicable.

H. Maximum Rate: Maximum rate payable under this Agreement is triple (3 times) the

Foreperson: Fifteen percent (15%) above the Journeyman rates specified in Rates of Pay. A foreperson is defined as one who has been designated as such by the manager or owner of the business, and is entitled to all provisions of this Agreement.

No Reduction: No full-time employee working less than the maximum hours or receiving more than the minimum wage set forth herein shall suffer an increase in hours or a reduction in wages by reason of the signing of this Agreement, and conditions of employment now existing in any place of business more favorable than specified in this Contract shall be maintained. This Section shall not apply to commissions, now or in the future, paid to employees for sales of tires or other commodities where special incentive allowances are made.

Hour Guarantees: Four (4) and eight (8) Hour Guarantees: All employees ordered to report or working four (4) hours or less receive four (4) hours pay; all employees ordered to report or working more than four (4) hours shall receive not less than eight (8) hours pay. These guarantees shall be limited to the straight-time working hours.

L. The Employer may establish a six (6) hour work day, said schedule will be posted for bid and will only be implemented if employees voluntarily bid for the shift. No full-time employees shall be scheduled for a six (6) hour workday if he or she does not voluntarily bid for the shift.

The Employer may establish a four (4) day, ten (10) hour work week. Said schedule will be posted for bid and will only be implemented if employees voluntarily bid the shift.

N. The employee shall be off Friday, Saturday, Sunday or Saturday, Sunday Monday, but no employee will be required to work a four (4) day, ten (10) hour work week.

O. All time worked in excess of ten (10) hours per day and/or forty (40) hours per week shall be paid for at the rate of time and one-half (1 1/2). The sixth (6th) consecutive day worked will be paid at double (2 times) the regular straight-time pay and the seventh (7th) consecutive day worked shall be paid triple (3 times) the straight time rate of pay.

P. Employees on a four day week required to work on the fifth (5th) day when it falls on a negotiated Holiday, shall be paid two and one-half (2 1/2) times the regular straight time rate of pay. Employees on the four day week required to work on the sixth (6th) day when it falls on a Holiday shall be paid triple (3 times) the straight time rate of pay.

Q. The Employer may establish a split shift. Said shift shall only be implemented if an employee volunteers. (A) Split shift shall be within twelve (12) consecutive hours. Four (4) hours on, four (4) hours off, four (4) hours on. (B) Split shift shall be within ten (10) consecutive hours. Three (3) hours on, four (4) hours off, three (3) hours on.

No employee shall be scheduled for a split shift if not voluntary. Volunteer employees shall be paid a premium of ten percent (10%) above employee's rate of pay.

**Employer's Split Shift Ratio**

| Ratio Employees | Split Shift Ratio |
| --- | --- |
| 50 | 1 |
| 50-100 | 3 |
| 100-150 | 4 |
| 150-200 | 5 |
| Over 200 | 6 |

R. The Employer shall be entitled to establish a five (5) hour shift, based on the ratio established below:

| Ratio Employees | Equivalent |
| --- | --- |
| 50 | 2 |
| 100 | 4 |
| 150 | 6 |
| 200 | 8 |
| 300 | 12 |
| 350 | 14 |
| 400 | 16 |
| 450 | 18 |
| 500 | 20 |

The workforce scheduled under this provision shall be voluntary.

## SECTION 15. DUTIES:

The duties of employees shall consist of the following: Janitorial, Cleaning, Washing, Polishing, Lubrication, Rent-Car Service, Parking Vehicles, Cashier, Attendants, Checking Coin Boxes, Non-Attendant Parking Lot checking, Traffic Director, Shuttle Driver and all other incidental duties necessary to the maintenance and operation of the business.

Cashier is one who makes change for services enumerated in the Agreement and may do daily ticket audit.

## SECTION 16. ACCIDENT & SICKNESS DISABILITY PLAN:

The Health and Welfare Plan provided for in Section 6 of this Agreement includes the following accident and sickness disability plan benefits:

A. First workday - when disabled because of accident or when hospital confined for either illness or accident.

B. 14th workday - when disabled because of an illness.

C. The maximum benefit payment is $60.00 per week payable for a maximum of twenty-six (26) weeks maximum for any disability.

Employees must be on State Disability or Workers' Compensation to be eligible.

Eligibility of employees: All employees who have performed more than eighty eight (88) hours worked in the prior months except those disqualified by Section 6.

Regular part-time employees who work more than eighty-eight (88) hours per month shall receive $30.00 benefit maximum.

G. Contractual vacations and holidays paid for but not worked shall be considered as time worked for purposes of this Section.

H. The Employer agrees to increase its payments and to pay in full any additional sums necessary to maintain these benefits and administration costs.

**SECTION 17. LEAVES OF ABSENCE (PAID):**

**A. JURY DUTY:**

1. An employee with twelve (12) months or more seniority who is required to report for jury duty shall be reimbursed for losses in his or her regular wages up to a maximum of one hundred sixty (160) hours every two (2) years. An employee who does not qualify for paid jury duty leave shall be granted unpaid time off to serve jury duty in accordance with Section 18 Leave of Absence (Unpaid) of this Agreement.

2. Employees scheduled for Swing shifts and Graveyard shifts are not required to report for work on any day when retained for Jury Service over three (3) hours.

3. Day shift employees are required to report to report to work prior to reporting for Jury Service if there is sufficient time for a minimum of three (3) hours of work.

4. Jury duty pay shall be capped at one hundred sixty (160) hours every two (2) years.

5. The Employer will grant jury duty pay to eligible employees who serve jury duty, provided the employee must:
   (a) Give notice of his or her summons to the Employer as soon as possible, and
   (b) Provide adequate proof of dates and time served and compensation received.

6. Any employee who has one (1) or more years' seniority with his or her Employer and has qualified for his or her initial vacation with that Employer, if called and reporting for jury duty, will be entitled to the difference between jury duty pay and his or her regular daily rate of pay for each day of jury service. Days of jury duty and all fees paid shall be verified by the court official. Service not paid for by the Court is not covered by this Section.

7. An employee dismissed from jury duty must immediately call his or her supervisor to determine when to return to work.

B. SUBPOENA: When an employee is requested or subpoenaed by the Employer to attend court or to be a witness for the Employer in any hearing, he or she shall be paid not less than a day's wages for each day at court.

C. BEREAVEMENT LEAVE: When a death occurs in the immediate family of an employee with one (1) year or more of employment, he or she shall be entitled to a leave of absence of three (3) days with pay. Immediate family is defined as employee's father, mother, children, spouse, brother, sister, grandparents, current step parents, current step grandparents, in-laws, and step-children living with the employee. The leave of absence shall be four (4) days with pay if the death is outside of California. The employee may be required to provide a death notice. Upon request of the employee, and if necessary, the employee may be granted an additional one (1) week unpaid leave of absence.

D. TIME OFF FOR VOTING: If an employee does not have sufficient time outside of working hours to vote in a statewide election, he or she may, without loss of pay, take off up to two (2) hours of working time to vote. Such time shall be at the beginning or end of the regular working shift, whichever allows the most free time for voting and the least time off from working, unless otherwise mutually agreed. The employee shall notify the Employer at least five (5) working days in advance to arrange voting time. In addition, employees may serve as election officials on Election Day without being disciplined, but the Employer is not required to pay them for such absences.

**SECTION 18. LEAVE OF ABSENCE (UNPAID):**

A. Military Service: Any employee who is inducted in the Armed Forces of the United States under the Military Selective Service Act, and who leaves a position (other than a temporary position) in the employ of Employer and (1) received a certificate relating to satisfactory completion of military service, and (2) makes application for reemployment within 90 days after being relieved from service, shall be re-employed by the Employer with the appropriate seniority, status and pay in accordance with federal provisions on veterans' reemployment rights.

B. Maternity Leave: The Employer agrees to grant maternity leave. Upon return from maternity leave, the employee shall be entitled to be reinstated to the same or similar job the employee held prior to the commencement of the leave. The Employer is required to maintain Health & Welfare coverage as set forth in the Family and Medical Leave Act during and up to twelve (12) weeks.

20

**C.** **Alcohol/Drug Rehabilitation:** Once during the term of this Agreement, an employee shall be permitted to take a leave of absence, up to a maximum of ninety (90) calendar days from the purpose of undergoing treatment pursuant to an approved program from alcoholism or drug use, consistent with the requirement of local, state and federal law. An employee on such leave of absence may not engage in any employment or services for any other competitive employer.

**Personal Leave:** An employee may be granted a personal leave without pay during the life of this Agreement for reasonable personal business, including paternity leave. An employee requesting such leave may do so in writing. An employee shall be entitled to a maximum of thirty (30) workdays for such leave. When operating conditions permit, the Employer may grant more, up to a maximum of six (6) months at the sole discretion of the Employer.

**Paternal Leave:** The Employer will provide up to four (4) months of unpaid leave to employees for the birth or adoption of a child or to care for a seriously ill child, parent or spouse. The Employer may reject an employee's request for leave if the employee's spouse is already on leave or if the spouse is unemployed. Seniority shall accumulate during leaves. Employees shall be entitled to take a total of twelve (12) weeks leave during any twelve (12) month period as set forth in the Family and Medical Leave Act and the Employer is required to maintain Health & Welfare coverage during the twelve (12) weeks of leave.

**Medical Leave:** Leaves of Absence may be granted by the Employer for illness or disability, with certification by a medical doctor, if requested by the Employer, equal to the employee's seniority with the Employer, but not to exceed three (3) years.

Leaves of absence due to Workers' Compensation Disability or sickness will not be limited, provided employee furnishes the Employer with satisfactory medical doctor certification if requested by the Employer. At least every three (3) months such disability or sickness must be certified.

**School Visits Required of Employees:** Employees who are parents or guardians of children in kindergarten through 12 grade shall be granted leave for required school visits under the following conditions:

1. The employee must give reasonable notice for time off.
2. The employee provides proof that he or she visited the school if the Employer requests. Proof means whatever documentation the school deems reasonable.

An employee on leave as set forth above, shall notify the Employer at least five (5) workdays before the beginning of the first shift to which the employee is scheduled to return. An employee requesting leave shall do so in writing to the personnel office, specifying the type of leave and dates desired. Requests shall be made as much in advance as possible, but at least thirty (30) days prior to the starting date if possible.

3. The employee may take up to four hours in each school year, per child, to visit a child in school, especially if the school requests the attendance of a parent.
4. The employee may utilize vacation time, personal time.
5. The employee is prohibited from discharging or discriminating in any way against an employee who is a parent or guardian contacted about the child's possible or actual suspension from school.

## SECTION 19. NO STRIKES OR WORK STOPPAGES:

A. No Strike: During the period of this Agreement, the Union agrees that its members will not engage in nor will the Union authorize or condone a strike or stoppage of work, except as provided herein, and the Employer agrees not to engage in any lockouts.

B. Right to Undertake Economic Action: Notwithstanding the above, the Union shall have the right to take any legal and/or economic action, including striking and picketing, against the Employer in the event of any of the following: (1) failure of the Employer to pay the required sums, including premiums and administration costs as provided for in this Agreement within thirty (30) days of the due date; or (2) failure of the Employer to meet the payroll of the employees covered by this Agreement unless this failure is due to acts of God or other matters of catastrophic nature beyond the control of the Employer. Nothing herein shall be deemed to preclude the Union at its option from utilizing the grievance procedure for any of the above claims in lieu of taking legal and/or economic action.

C. Picket Line: It shall not be a violation of this Agreement, and it shall not be cause for discharge, for any disciplinary action or for permanent replacement in the event an employee refuses to enter upon any property involved in a lawful primary labor dispute or refuses to go through or work behind any lawful primary picket line, including any lawful primary picket line established by the Union and including any lawful primary picket lines at the Employer's place of business. However, the lawful primary labor dispute or picket line must be deemed to preclude the Union at its option from utilizing the grievance procedure for any of the above claims in lieu of taking legal and/or economic action.

## SECTION 20. GENERAL PROVISIONS:

A. Business Representation: The business representatives of the Union shall be permitted to visit the place of employment for the purpose of seeing that the Agreement is being observed and complied with, provided however, that such business representative shall not interfere with the performance of work.

All employees performing bargaining unit work shall maintain Union membership and shall carry on their person the Union Identification Card issued by the Union.

Without interfering with the performance of work, Business Representatives may ask for such I.D. at anytime at the member's place of employment.

B. Teamster D.R.I.V.E: The Employer agrees to deduct from the paycheck of all employees covered by this Agreement voluntary contributions to DRIVE. DRIVE shall notify the Employer of the amounts designated by each contributing employee that are to

21

be deducted from his or her paycheck on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage. The Employer shall transmit to DRIVE National Headquarters on a monthly basis, in one (1) check, the total amount deducted along with the name of each employee on who's behalf a deduction is made, the employee's Social Security number and the amount deducted from that employee's paycheck. The International Brotherhood of Teamsters shall reimburse the Employer annually for the Employer's actual cost for the expenses incurred in administering the weekly payroll deduction.

Commuter Checks: The Employer agrees to deduct from the paycheck of all employees covered by this Agreement pre-tax wages to be used solely for the purchase of Commuter Check Vouchers, under the guidelines of the Commuter Choice Tax Initiative of 1998.

Employee Parking: The Employer agrees to make every effort to allow employees to park for free at their work site. The parties agree that free parking and other parking privileges remain at the discretion of the clients of the Employer.

Sales Meetings: An employee who is ordered to attend a sales or service meeting after he or she has completed eight (8) hours of work, or on his or her day off, shall receive time and one-half (1 1/2) for the time spent in such meeting. This only applies if attendance at the meeting is mandatory. Three days notice of meeting must be given. There shall be no compulsory unpaid meetings on the employees' own time.

Uniforms and Laundry: The Employer shall furnish and maintain any specified type, color of uniforms, coats, smocks, or overalls, where such articles are required. The Employer shall also furnish all boots, aprons, tools, etc. necessary for the work to be performed and rain gear where required. For employees hired after this Agreement is signed, the Employer shall deduct $250.00 as a deposit for the return of issued uniforms. Said deduction to be taken in the amounts of $50.00 per month for five months. The deposit shall be returned to the employee at conclusion of the employment relationship when he or she returns the uniform and all apparel issued by the Employer, provided the Employer may make a pro-rata deduction from the deposit for items not returned.

More Favorable Conditions: No employee working less than the maximum hours or earning more than the minimum wage set forth herein shall suffer an increase in hours or a reduction in wages by reason of the signing of this Agreement, and wages and conditions of employment more favorable than specified in this Agreement shall be maintained.

Partnership: The Union recognizes the right of bona fide partners or executives of corporations to perform a reasonable amount of manual labor, and such work shall be exempted from the working conditions of this Agreement.

A abuse of this privilege shall be handled in conformity with the Grievance Procedure in this Agreement. Only the partner shall be recognized as the Employer and excluded from the terms of this Contract.

I. Work Rules: The Employer has the right to establish Work Rules which shall be conspicuously posted and which the employees shall observe. On the effective date of this Agreement, the attached Work Rules (Appendix A) shall be in effect, if the Employer so desires. Any changes to these Work Rules shall be negotiated and agreed to by the parties.

J. Lie Detector Test: No employee or applicant for employment shall be required to take a lie detector test as a condition of employment or continued employment. The use of lie detector tests shall be voluntary.

K. Pay Day Schedules: Pay days will be moved forward when banks are closed due to State or Federal Holidays and if a pay day falls on a Saturday or Sunday, the pay day will be rescheduled and moved to the previous Friday.

L. Responsibility: The Employer shall not make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee.

M. Working Managers, Foremen and Assistants: Managers, foremen and assistants who perform bargaining-unit-work shall have all the rights and privileges in the collective bargaining agreement.

N. Pay Upgrade: An employee regularly employed in a lower pay classification who performs work in a higher pay classification shall be paid at the higher classification for the entire day.

O. Commissions and Over scale: None of the following systems shall be employed to compute wages: Flat Rate, Piece Work, Task or Contract system. This Section shall not be construed so as to prevent the payment of commissions or bonuses over and above the minimum wage scale, nor shall the payment of bonuses or commissions be construed as payments for overtime work. There shall be no reduction in pay of employees being paid above contract scale. All such employees all receive the increases as per the wage schedule contained in Section 13.

P. Subcontracting: The Employer and the Union agree that stabilized employment is an important objective to be attained. Therefore, the Employer agrees that during the life of this Agreement, no worker services presently performed or thereafter assigned to the collective bargaining unit shall be subcontracted, transferred, leased or assigned in whole or in part to any other plant, person or non-unit employees unless the express written permission of the Union is obtained.

Q. Acts of God: Guarantees shall not apply if the Employer is unable to operate due to an act of God, utility failure, government restriction, fire, flood, riot, civil commotion, terrorism, the failure or refusal of the group of employees to report for or perform their work, or any cause beyond the control of the Employer.

R. San Mateo County rate: The wage rates contained herein shall not include any bargaining unit under the jurisdiction of or providing service to the San Francisco International Airport (SFO).

## SECTION 21. TECHNOLOGICAL CHANGE:

In the event of any technological change that affects any work which has traditionally been performed within the bargaining unit, either party may propose a written re-opener for negotiations to accommodate in a reasonable fashion such technological change. During such negotiations, the parties will consider the possible establishment of one or more new classifications with job description and wage rates in relation to skills required and duties performed. If the parties are unable to agree during such negotiations, then the matter shall be referred for final resolution to an interest arbitration. If other unions adopt a similar provision, then any interest arbitration may be consolidated.

## SECTION 22. SAFETY:

The Employer and the Union recognize a mutual obligation to encourage and promote safety in the workplace. The Employer may require employees to take certain reasonable precautions and to use certain equipments and protective devices in order to promote safety. The Employer agrees to abide by state and federal laws regarding safety.

## SECTION 23. MANAGEMENT RIGHTS:

Except as provided in this Agreement, the management of the Employer's operation and the direction of the employees, including all of the rights, powers, authority and prerogatives which the Employer has traditionally exercised, are expressly reserved to the Employer.

The choice, control and direction of supervisory and management staff shall be vested solely and exclusively in the Employer.

## SECTION 24. COMPENSATORY INJURIES:

Health and Welfare premiums are to be paid while employees are off on Workers' Compensation up to six (6) months with a maximum of one (1) time in the life of this contract.

1st three (3) months will be paid by the Bay Area Automotive Group Welfare Fund for the negotiated Plan only.

2nd three (3) months will be paid by Employers.

Employer will not prorate vacations based on Workers' Compensation time of up to 6 months. Absence due to Workers' Compensation injury shall not break the continuity of continuous service for the purpose of vacation eligibility and pay only up to 6 months.

## SECTION 25. CHANGE OF OWNERSHIP:

In the event the Employer changes hands, the seller shall, at or prior to the date of change of ownership, pay off all obligations to employees, including unpaid wages, pro-rata of earned vacation, unpaid premiums or contributions on health and welfare, medical hospital and insurance plan, dental, orthodontia, vision, prescription drugs, life insurance, accident and sickness disability, pension and supplemental income. The payment of pro-rata vacations shall include all employees, whether or not they have been on the payroll for more/less than one year.

The parties agree that this Agreement shall be binding upon the Employer and the Union and any and all of their respective successors, transferees and assigns, whether by sale, transfer, merger, lease, acquisition, consolidation or otherwise and that they will faithfully comply with its provisions.

Before any sale, transfer, assignment, merger, lease or other legal change in the name of ownership, the Employer shall advise the Union in writing one (1) month in advance of such contemplated sale, transfer, assignment, merger, lease or other legal change in name or ownership. The Employer shall notify the Union in writing at least fourteen (14) calendar days prior to the actual effective date of any sale, transfer, assignment, merger, lease or other legal change in name or ownership. The date designated shall presumptively be the date of change of legal change in name or ownership.

Before any sale, transfer, assignment, merger, lease or other legal change in name or ownership made by the Employer, the Employer shall fully inform the purchaser, transferee, assign, lessee or other new owner (hereinafter "the successor") as to all terms and conditions of this Agreement.

The Employer shall make it a condition of sale, transfer assignment, merger, lease or other legal change in name or ownership that the successor shall be fully bound by the terms of this Agreement. In the event the Employer fails to require the successor to assume the obligations of this Agreement, the Employer shall nevertheless continue to be liable for the complete performance of this Agreement until the successor expressly agrees in writing with the Union that it is fully bound by the terms of this Agreement.

All the employees shall carry with them to the successor all seniority, vacation and pension rights accumulated during their employment by the seller.

In the event the Employer is a party to a merger, seniority of the employees who are affected thereby shall be determined by mutual agreement between the Employer and the local unions.

## SECTION 26. CHANGE OF MANAGEMENT LOCATION:

In the event of a parking location changing from one firm to another, the former owner/firm shall, at or prior to the date of change, pay off all obligations to employees,

including unpaid wages, pro-rata vacations, unpaid premiums, or contributions to the medical, dental, hospital, prescription drug, vision care and insurance plan and pension plan. The payment of pro-rata vacation shall include all employees, whether or not they have been on the payroll for more/less than one year.

The new owner/firm shall have sixty (60) days from the date of taking possession in which to decide whether to keep or terminate any employee and may terminate any such employee. During such sixty (60) day period, the new owner/firm shall be obligated to pay the wages, vacation, contributions toward hospital, medical and insurance plan, dental plan and pension plan, and comply with all other conditions of this Agreement in effect at the time of the sale and transfer.

In the event that the new owner/firm continues to employ such employees for more than sixty (60) days after date of sale or transfer, such employees shall carry with them all seniority, vacations and pension rights accumulated during their employment by the former owner/firm and be carried on the books of the new employer as of the service starting date of the former Employer.

### SECTION 27. DRIVER'S LICENSE:

To be eligible for employment or continued employment, an applicant or employee must possess a valid California driver's license and must provide the Employer with a photocopy of his or the driver's license. In addition, every applicant for employment must obtain from the California Department of Motor Vehicles ("DMV printout") detailing his or her driving record and driver's license information.

Failure of an employee who parks motor vehicles to inform the Employer that his or her driver's license has been suspended or revoked may result in immediate termination. Failure of an employee to maintain or renew a current California driver's license may result in immediate suspension without pay until the employee obtains a valid California driver's license but not to exceed ninety (90) days. Provided that any current employee who has been allowed to work without license shall continue to be allowed to work so long as the employee's work assignment does not require driving a motor vehicle.

### SECTION 28. EMPLOYEE WARNING NOTICE & CONDUCT OF EMPLOYEES:

The Employer shall not discharge or suspend any employee without just cause and shall give at least two warnings of any complaint against such employee in writing to the employee before he or she is discharged or suspended. Discharge or suspension must be by proper written notice to the employee.

No warning notice need be given in the case of: 1. proven dishonesty 2. being under the influence of narcotics or intoxicating beverages or possession or drinking of the latter while on duty 3. failure to report any accident which has resulted in personal injury or property damage 4. willful destruction of property 5. proven theft 6. using a customer's vehicle for personal use without permission 7. loss of driver's license 8. not

returning from a leave of absence 9. leaving a place of employment before the completion of a designated shift 10. breach of confidence 11. three (3) consecutive days without report 12. altering own timecard or another employee's timecard unless permitted to do so by Employer.

An employee may request an investigation of his discharge or suspension or any warning notice and the Union shall have the right to protest any such discharge, suspension or warning notice. Any such protest shall be presented to the Employer in writing within ten (10) days for discharge and thirty (30) days for suspension and warning, exclusive of Saturdays, Sundays and holidays after the discharge, suspension or warning notice, and if not presented within such period, the right of protest shall be waived.

The Employer shall give to a discharged employee a written notice of termination.

All notices of discharge, suspension or warning notices shall be issued within ten (10) days from when the occurrence involved took place, or within ten (10) days from when the Employer knew or should have known of the occurrence, excluding Saturdays, Sundays and contract holidays. If not presented within such period, the right to discipline shall be waived. There shall be no time limits in cases where the offense is proved theft.

No suspension shall extend for a period greater than fifteen (15) workdays.

Such warning shall expire after 12 months unless there is a 2nd warning issued within twelve (12) months.

All warning notice shall be stricken and become null and void twelve (12) months from their date of issuance, provided the employee has not received another notice for the same type of infraction within that twelve (12) month period. When two (2) or more correction notices have been issued in a twelve (12) month period, for the same type of infraction, the correction notice will stand as issued for a period one (1) year before being stricken from the records.

### SECTION 29 TIME LIMIT FOR FILING A GRIEVANCE

A. Discharge: An employee may request an investigation of his or her discharge; any such protest shall be presented to the Employer within ten (10) days excluding Saturdays, Sundays and Holidays, after the employee becomes aware of the discharge.

If not presented within such time period: the right of protest shall be waived.

B. All other complaints or disputes (excluding discharge) shall be presented to the Employer within thirty (30) days after the employee or the Union becomes aware of the complaints or disputes.

C. Claims: All money claims against the Employer must be made within thirty (30) calendar days of alleged violation and settlements made shall not exceed the last ninety (90) days of employment.

# SECTION 30. GRIEVANCE PROCEDURE, ADJUSTMENT BOARD OR MEDIATION, ARBITRATION:

A. Any grievance which cannot be settled directly by the Local Union Business Representative with the location manager of the Employer shall be reduced to writing and referred by the Union Business Representative to the local Employer representative or the designated representative of the Employer within seven (7) working days.

B. All complaints concerning a violation of this Agreement, all questions or disputes concerning the meaning, interpretation, application or enforcement of this Agreement which are not settled in the manner above provided within five (5) business days, unless mutually extended, shall be referred to a Board of Adjustments upon written requests of either party, who shall specify the nature of the complaint in such requests. If mutually agreed between the parties, the grievance shall proceed to an impartial mediator selected from the Federal Mediation and Conciliation Service instead of the Board of Adjustment. The mediator will issue a non-binding recommendation to the parties. Either party to the mediation may reject the non-binding recommendation by demanding Arbitration in accordance with Section 30 (D) below within ten (10) business days of receiving the non-binding recommendation, otherwise it shall become final and binding.

C. The Board of Adjustment shall consist of two (2) representatives of the Union and two (2) representatives of the Employer. No member of the Union or any representative of the Union directly involved in, or a party to the dispute, and no Employer or representative or Attorney of any Employer directly involved in, or a party to the dispute, shall be eligible to serve as a member of the Board of Adjustment. A decision by majority of the members of such Board shall be final and binding on all parties. If mutually agreed, the Board of Adjustment may take place on the date that has been set aside for other Board of Adjustments to meet, otherwise it will meet at the parties' convenience.

D. In the event that the Adjustment Board is unable to reach a decision by majority or unanimous vote on any such matter, or a party is dissatisfied with the non-binding recommendation of the mediator, the party may bring the matter to an impartial arbitrator by demanding arbitration in writing to the Federal Mediation and Conciliation Service within ten (10) business days of receiving notification from the Board of Adjustment or the mediator. The decision of the impartial arbitrator shall be final and binding. Each side shall pay one-half the charges of such Arbitrator.

Selection of the impartial Arbitrator shall be from a list of five (5) names furnished by the Federal Mediation and Conciliation Service, with each side striking one (1) name in order to reduce the list to one (1) person.

If the Arbitrator so selected cannot hear the matter within forty-five (45) days, a second Arbitrator selected by level shall be the Arbitrator, and so on.

There shall be no transcripts of any arbitration unless the parties mutually agree to do so. No briefs shall be submitted and the arbitrator shall render a bench decision upon conclusion of the case, unless the time is extended by mutual agreement of the parties, but in no case shall the extension be in excess of five (5) working days.

Neither the Board of Adjustment nor the Arbitrator will have the authority in any manner to amend, alter or change any provision in the Agreement.

Time limits projected herein may be extended or waived by mutual agreement between the parties.

The Employer will not discharge or suspend any employee without just cause.

If an Employer discharges an employee the wages are unpaid vacation at the time of discharge are due and payable immediately.

## SECTION 31. MARKETING CONDITIONS:

The parties to this Agreement recognize the necessity of monitoring economic standards within the industry and the competitive pressures existing. Consistent with that recognition, the Union agrees to meet with the Employer on request to review the continuing effectiveness of this Agreement in maintaining the Employer's competitive position. In the event that the Employer determines during the term of this Agreement that it is at a substantial competitive disadvantage relative to other parking companies which may be bidding on a particular facility it shall have the right to request a meeting with the Union to discuss the situation. The parties shall use their best efforts to reach agreement on measures designed to reduce the competitive disadvantage; including if necessary, modifications to the Agreement provided that any agreed upon modifications shall be subject to the ratification and approval of the affected membership. In the event any such proposed modifications are not ratified by the membership they shall not become effective. It is further agreed that the Employer shall not unilaterally implement any modifications to the Agreement and that neither party may resort to economic action during the term of the Agreement except as may be otherwise expressly provided. The Employer shall provide the Union all financial and other information reasonably necessary to assist the Union in assessing the competitive problems and to determine what relief, if any, maybe appropriate.

## SECTION 32. SAVINGS

If any provision of this Agreement is declared illegal or invalid by final decree of any lawful authority, such provision shall be modified to comply with the requirements of the law or shall be renegotiated for the purpose of adequate replacement.

## SECTION 33. EXPIRATION AND REVISION:

This Agreement shall be in effect on December 1, 2003 and shall continue in effect until November 30, 2008, and from year to year thereafter for like terms, subject however, to revision by notice in writing by either party to the other sixty (60) days prior to the anniversary date. During such sixty (60) day period, conferences shall be held looking toward a revision of this Agreement. If negotiations extend beyond the anniversary date or expiration of this Agreement, no change shall be made in any terms or conditions of employment unless expressly agreed to by the parties. All revisions and wages shall be effective as of the anniversary date of this Agreement.

Dated and entered into this ___5th___ day of December, 2003.

TEAMSTER AUTOMOTIVE & ALLIED WORKERS,
LOCAL UNION NO. 665

Ernie Yates – Secretary Treasurer

Mark I. Gleason – President

Edward Dion- Vice President

### Jurisdictional Operators of Parking Facilities
The Signatory Employers are:

Ace Parking Mgmt., Inc., American Parking Mgmt., Ampco System Parking, ANCOA/Standard Parking, Cable Car Parking, CitiScape Prop. Mgmt., CityPark, City Parking Company, C.M.P. Service, California Parking/ D & J Parking, Five Star Parking, Imperial Parking (U.S.) Inc., Harsch Investments Corp., Hines Interests L.L.P., Mission Economic Development Assoc., Pacific Park Mgmt., Parking Concepts Inc., Portsmouth Square Parking Corp., R & R Parking, Savoy Corporation, Terwilliger Management, San Francisco Parking, QBM Parking, N. M. Parking, DAJA Parking, K. T. Park, Place 2 Park, Union Pacific Parking, U. S. Parking Inc., Propark America West, L.L.C.

## APPENDIX "A". WORK RULES

Violations of the following rules may result in discipline or discharge, subject to the contractual grievance procedure.

1. The Employer shall have the right to request that an employee produce verification of illness or injury in cases where the employee is absent in excess of three (3) workdays.

2. Excessive absenteeism shall be cause for discipline and continued excessive absenteeism after warning shall be cause for discharge.

3. Employees shall not be under the influence of and/or possession of illegal intoxicants-alcohol or narcotics - at the Employer's premises during working time. Drugs shall not be used at work without written permission from a physician.

4. Gross insubordination.

5. Theft or embezzlement.

6. Deliberate falsification of Employer records, including timecards.

7. Unauthorized use of the Employer's property or vehicles.

8. Fighting on Employer's time or premises.

9. Failure of the employees to obtain or maintain a current, valid driver's license; provided that any current employee who has been allowed to work without a license shall continue to be allowed to work.

10. Deliberate destruction of the property of the Employer, customers or other employees;

11. Refusal to comply with reasonable safety precautions required by the Employer;

12. Breach of confidence; no employee shall disclose any confidential information pertaining to the Employer's business.

13. Failure to report damage of a customer's car to your Employer.

14. Unauthorized removal from company premises of merchandise, money or property belonging to the Employer or other employees and customers.

15. Altering your own timecard, or another employee's timecard unless permitted to do so by his or her Employer.

16. Leaving his or her place of employment before the completion of his or her designated shift, unless permitted to do so by his or her Employer.

Any warning letter or suspension issued for violation of any of these Rules shall be void after twelve (12) calendar months.

Printed on recycled paper by
AUTUMN PRESS
*A Union Shop*
Emeryville, CA

## Members:

# When in doubt, Call your Union

The Supreme Court has ruled that an employee is entitled to have a Union Representative present during any interview which may result in his or her discipline. It is up to you, the employee to insist upon Union representation.

### Interrogation Rights Statement

If this discussion could in any way lead to my being disciplined or terminated, or affect my personal working conditions, I respectfully request that my union steward, business agent, or union officer be present at this meeting. Without representation, I refuse to submit to this interrogation.

# EXHIBIT B

Ibrahim E. Kurtcu
Vs.
U. S. Parking Inc.

Date of Hearing: Wednesday March 19, 2008 at 10:00 a.m.

Location: 295 89th Street, Suite 306, Daly City CA  94015

The Union, the Employee and the Employer agree to submit to the arbitrator the grievance of Mr. Ibrahim E. Kurtcu vs. U. S. Parking Inc.

Exhibit 1. Notes for Mr. Kurtcu

Exhibit 2. Kurtcu  October 11, 2007

Exhibit 3. Kurtcu September 24, 2007

Exhibit 4. Calendar

Exhibit 5. August 12, 2007

Exhibit 6. Master Agreement Wages

Exhibit 7. September 6, 2007

Exhibit 8. Time Sheet

The Arbitrator shall render a decision in 10 working days of the decision of the impartial arbitrator shall be final and binding on all parties and there shall be no transcript or briefs shall be submitted.

For the Union _____

For the Employee _____

For the Employer _____ Orhan  Kaplankiran

**DRAFT LETTER TO BE GIVEN TO THE UNION**

We need to obtain a transcript of the arbitration hearing or a decision letter from the commissioner or our local union. We think, the following points need to be stressed out on the written documentation of the hearing in particular:

1. US Parking, Inc. stated that according to Local Union.665 Master Agreement booklet page 27, Section 29.C., all money claims against the employer must be made within thirty (30) calendar days of alleged violation and settlements made shall not exceed the last ninety(90) days of employment. Therefore, Mr. Edip Kurtcu is not owed anything by US Parking, Inc. for the alleged violations within the last 90 days of employment and/or for the time period May 12, 2007 – August 12, 2007. He filed a written claim with Local Union.665 on August 12,2007.

2. US Parking, Inc. stated that according to Federal and State Labor laws, wage compensation claims against the employer must be made within 3 years of alleged violation and settlements made shall not exceed the last 3 years of employment. Because US Parking, Inc. does not have reliable employee time records prior to 2006, it is willing to accept Mr. Edip Kurtcu's wage compensation claims calculated based on the employee's claimed worked hours for the subject 3 years period, September 2004 – August 2007. The monetary amount for Mr. Edip Kurtcu's wage compensation related claims for the subject 3 years period is $22,899.44. US Parking, Inc. also stated that the company was disorganized and inefficient in many ways prior to 2006 due to unsystematic and fast expansion of operations. Therefore, it went under a restructuring effort in its operations and record keeping in particular, starting the second half of 2006.

3. US Parking, Inc. also stated that it already settled with Mr. Edip Kurtcu, and willing to compensate him for what he claimed for unpaid regular and overtime wages, paid holidays & vacations, sick leave and reimbursement for medical/dental/vision related expenses incurred within the period of Mr. Edip Kurtcu's employment with US Parking, from February 2002 to the current date. As of March 19,2008, US Parking, Inc is willing to compensate Mr. Edip Kurtcu for $64,050 calculated based on Mr. Edip Kurtcu's claimed worked hours because US Parking, Inc. does not have reliable employee time records prior to 2006. US Parking also believes that it should show its good will towards its employees and please any offended or unhappy employee among its workforce whenever possible.

4. US Parking, Inc. feels that all other claims other than wage compensation related claims such as workplace conditions and emotional distress are subject to Workers' Compensation Insurance, and should be brought before Workers' Comp. Commission. Additionally, 401(k) and pension plan related claims are subject to Western Conference of Teamsters Pension Trust Fund, and US Parking, Inc. is regularly audited for 401(k) and pension plan contributions by independent auditors on behalf of Western Conference of Teamsters Pension Trust Fund.

5. Finally, US Parking, Inc. states that it will accept the arbitrator's decision as final and binding no matter what the outcome is.

# EXHIBIT C

# TEAMSTERS AUTOMOTIVE & ALLIED WORKERS
## LOCAL UNION NO. 665
SAN FRANCISCO, SAN MATEO, SANTA CLARA,
& SAN BENITO COUNTIES, CALIFORNIA
Ernie Yates, Secretary-Treasurer



295 89th Street, Ste 306
Daly City, CA 94015
Tel.650.991.2102
Fax.650.991.1950

April 7, 2008

Orhan Kaplankiran
US Parking Inc.
1375 Sutter Street, Ste 108
San Francisco CA 94109

**Re: Ibrahim E. Kurtcu**

Dear Mr. Kaplankiran:

As you are aware, a hearing was held on March 19, 2008 to determine the merits
of a grievance filed by Mr. Kurtcu for back wages and benefits.

After review by arbitrator Ruth Carpenter, a ruling was made that Mr. Kurtcu
should be awarded $64,048.

As this issue was presented as final and binding by the parties, we direct you to
pay Mr. Kurtcu this amount. With this payment the matter will be closed.

Thank you for your attention.

Very Truly Yours,

Mark Gleason
President

Cc: Ibrahim Kurtcu
      Ernie Yates

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS & TEAMSTERS JOINT COUNCIL NO. 7

e-mail: info@teamsters665.org

# EXHIBIT D

# A MATTER IN ARBITRATION

In a Matter Between:                          )
                                             )    Grievant: IBRAHIM E. KURTCU
                                             )
                                             )
     (Employer)  U S PARKING                 )    Hearing: March 19, 2008
                                             )
and                                          )    Award: April 9, 2008
                                             )
                                             )    Carpenter Case No.  082
                                             )
                                             )
     (Union) TEAMSTER LOCAL 665              )
                                             )

## DECISION AND AWARD

## RUTH CARPENTER, ARBITRATOR

Appearances By:

   Employer:

   Orhan Kaplankiran
   Vice President
   Operations and
   Human Resources

   Union:

   Mark Gleason
   Business Agent

Page 2

## STATEMENT OF PROCEDURE

This matter arises out of the application and interpretation of a Collective Bargaining Agreement, which exists between the above-identified Union and Employer. Unable to resolve the dispute between themselves, the parties selected this Arbitrator in accordance with the terms of the contract to hear and resolve the matter. A hearing was held in Daly City, California on March 19, 2008. During the course of the proceeding, the parties had an opportunity to present evidence and to cross-examine the witness. Having had an opportunity to review the record, the Arbitrator is prepared to issue her decision.

## ISSUE

Ibrahim R. Kurtcu contends he did not receive the correct amount of pay or benefits for the time that he has worked for this Employer.

## RELEVANT CONTRACT LANGUAGE

The Sections Listed below in the Master Agreement and Area Standards Employment Practices in the Parking and Garage Industry, San Francisco and San Mateo Counties, By and Between Teamsters Automotive and Allied Workers, Local Union No. 665 and the Signatory Employers December 1, 2003 through November 30, 2008.

Page 3

SECTION 5. VACATIONS

SECTION 6. HEALTH & VACATIONS

SECTION 7. PENSION PLAN

SECTION 10. SICK LEAVE

SECTION 13. RATES OF PAY

SECTION 14. WORK WEEK HOURS & OVERTIME

SECTION 29. TIME LIMIT FOR FILING A GRIEVANCE

## BACKGROUND

The grievant is a parking attendant for U S Parking. The grievant contends he was incorrectly paid wages and benefits since he started working for the Employer on February 28, 2003. The Company has had a collective bargaining agreement with Teamsters Local 665 since 2002, which was in force at the time. The grievant contends he was discouraged from joining the Union, even though the collective bargaining agreement states all employees must join the Union after 31 days of employment. The grievant joined the Union March 1, 2006 and after receiving a copy of the agreement filed this grievance October 12, 2007.

Page 4

## POSITION OF THE PARTIES

**EMPLOYER**

The Employer states that when they became Unionized and signed a Master Agreement they didn't understand everything in the Collective Bargaining Agreement. The Employer admits they made mistakes and tried to change things in 2006. The Employer contends the Collective Bargaining Agreement states the grievant can only go back 90 days on money claims.

**UNION**

The grievant was not properly paid for time he worked including overtime, and time worked for ball games. The grievant should have been covered under the Union Joint Trust Health Plan but was told that since his wife had health coverage he didn't need it. The grievant has paid over ($6,000) dollars in co-pays he wouldn't have had to pay if he had been covered under the Union Trust Health Plan. The Employer did not make pension contributions to the pension plan for the grievant. The grievant also states he received some of his wages in cash.

## DISCUSSION

The Employer realizes they made many mistakes in the way the grievant was paid. The Employer, Union, and Arbitrator went over the grievant's time cards and pay slips and came up with $54,725, including overtime; $1,031 for ballgame shifts. The Employer is now being audited by the pension fund. The grievant states the Employer has not paid the proper amount to Social Security, but the proper amount will be taken from the grievant's back pay.

Page 5

The grievant states he has knee, waist and back pain, and has suffered emotional distress.  I informed the grievant that is covered by workman's comp if it occurred on the job.  The grievant said he had no heat, no restroom or running water, which is inherent in the job of Parking Attendant.  The grievant stated he should also be paid punitive damages.

## AWARD

The grievant shall receive $54,725 in wages, including overtime;  $1,031 for the shifts he worked at ballgames;  $6,000 for medical out-of-pocket expense;  $2,292 for vacation, sick leave and holidays he was entitled to receive for a total of $64,048.  The Employer will pay his pension benefits to the pension plan.  There are no punitive damages awarded in this case

**IT IS SO ORDERED.**

April 9, 2008

*Ruth Carpenter*
**Ruth Carpenter, Arbitrator**

# EXHIBIT E

April 14, 2008

**US Parking**

VIA HAND DELIVERY

From:   U.S. Parking, INC.
        Orhan Kaplankiran
        1375 Sutter St, Suite 108
        San Francisco, CA 94109
        1-415-771-4440 (Office)

To:     Ibrahim Edip Kurtcu
        31292 Santa Maria Dr.
        Union City, CA 94587

Dear Mr. Kurtcu:

Enclosed please find your check in the amount of $50,628.97 ($64,048 minus the applicable taxes we are obligated to withhold), in full payment of the arbitration award by arbitrator Ruth Carpenter, received April 9, 2008.

Very truly yours,

Orhan Kaplankiran
Vice President of
Operations & HR

US Parking Inc.
1375 Sutter St, Suite 108
San Francisco, CA 94109
Cell:    415 342 7554
Office:  415 771 4440
Fax:     415 771 4441
usparking@yahoo.com

1X1

**US PARKING INC**
855 Geary St.
San Francisco, CA 94109

## Earnings Statement

ADP EASYPAY

Pay Period:    3/26/2008  to  4/09/2008
Pay Date:       4/10/2008
Check #:         8726

Employee Number:        0095
Department Number:      05
Social Security Number: XXX-XX-9500
Marital Status:         MARRIED
Number Of Allowances:   02
Rate:

IBRAHIM E KURTCU
31292 SANTA MARIA DR
UNION CITY, CA 94587

| Hours and Earnings | | | | Taxes and Deductions | | |
|---|---|---|---|---|---|---|
| Description | Hours | This Period | Year-To-Date | Description | This Period | Year-To-Date |
| REGULAR |  |  | 8687.50 | FICA | 4899.88 | 5727.32 |
| O/TIME |  |  | 288.98 | FED WT | 6579.70 | 7319.50 |
| OTHER |  |  | 458.40 | CA ST | 1427.26 | 1508.34 |
| SALARY |  | 64048.00 | 64048.00 | CA DIS | 512.39 | 598.94 |
| SICK |  |  | 772.80 | UNION3 |  | 169.00 |
| HOLDAY |  |  | 458.40 |  |  |  |
| FLTHOL |  |  | 152.80 |  |  |  |

| Gross Pay Year To Date | Gross Pay This Period | Total Deductions This Period | Net Pay This Period |
|---|---|---|---|
| $74,866.88 | $64,048.00 | $13,419.03 | $50,628.97 |

COPY    COPY

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

VOID VOID VOID VOID VOID VOID

**US PARKING INC**
855 Geary St.
San Francisco, CA 94109

Check No  8726
Check Date   4/10/2008

**★FIFTY THOUSAND SIX HUNDRED TWENTY EIGHT DOLLARS AND 97 CENTS ★**

Pay To The
Order Of

IBRAHIM E KURTCU
31292 SANTA MARIA DR
UNION CITY, CA 94587

Pay This Amount

$50628.97

BANK OF AMERICA

1  DOUGLAS R. SCHWARTZ (State Bar No. 98666)
   PETRA M. REINECKE (State Bar No. 154482)
2  SCOTT R. LOVERNICK (State Bar No. 233755)
   SCHWARTZ & CERA LLP
3  44 Montgomery Street, Suite 3850
   San Francisco, California 94104
4  Telephone:  (415) 956-2600
   Facsimile:  (415) 438-2655
5
   Attorneys for Defendants
6  U.S. PARKING, INC. and
   CIHAT ESREFOGLU
7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12 | IBRAHIM E. KURTCU, on behalf of    ) Case No. C 08-02113-WHA
   | himself and others similarly situated, )
13 |                                     ) **[PROPOSED] ORDER GRANTING**
   |                    Plaintiff,       ) **MOTION TO DISMISS FOR FAILURE**
14 |                                     ) **TO STATE A CLAIM UPON WHICH**
   |                  vs.                ) **RELIEF CAN BE GRANTED**
15 |                                     ) **PURSUANT TO FEDERAL RULE OF**
   | U.S. PARKING, INC., a corporation;  ) **CIVIL PROCEDURE 12(B)(6) OR, IN**
16 | CIHAT ESREFOGLU, an individual; and ) **THE ALTERNATIVE, FOR SUMMARY**
   | DOES 1 through 10, inclusive,       ) **JUDGMENT**
17 |                                     )
   |                    Defendants.      ) **[Notice of Motion and Motion to Dismiss,**
18 |                                     ) **Request for Judicial Notice, and**
   |                                     ) **Declaration of Orhan Kaplankiran filed**
19 |                                     ) **separately]**
   |                                     )
20 |                                     )
   |                                     ) DATE:   June 5, 2008
21 |                                     ) TIME:   8:00 a.m.
   |                                     ) CTRM:  9, 19th Floor
22 |                                     )

23

24       The above-referenced case came on regularly for hearing on June 5, 2008, before this

25 Court, the Honorable William H. Alsup presiding, on the motion by defendants U.S. Parking, Inc.

26 and Cihat Esrefoglu for dismissal of Plaintiff's Complaint in this matter for failure to state a

27 claim upon which relief can be granted or, in the alternative, for summary judgment in their

28 favor.  All parties were represented by counsel at the hearing.

1         The Court, having considered the pleadings and evidence filed in support of and in

2    opposition to defendants' motion, the records and files in this action, and any further arguments

3    submitted at the hearing of this motion, hereby rules as follows:

4        1.    Defendants' motion to dismiss is granted in its entirety;

5        2.    Plaintiff complaint fails to state a claim upon which relief can be granted because

6    the prior labor arbitration which plaintiff initiated, participated and prevailed in, and which

7    resulted in an award to plaintiff which has been paid precludes plaintiff from pursuing his

8    complaint in this Court under the principles of *res judicata* and collateral estoppel;

9        3.    Plaintiff's complaint is dismissed without leave to amend.

10       IT IS SO ORDERED.

11   DATED:

12

13                     THE HONORABLE WILLIAM H. ALSUP
                  UNITED STATES DISTRICT COURT JUDGE