JACK W. LEE, Bar No. 71626
JOHN OTA, Bar No. 195532
MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, California 94108
(415) 788-9000
Fax (415) 398-3887
Email: johno@minamitamaki.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| IBRAHIM E. KURTCU, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>U.S. PARKING, INC., a corporation; CIHAT ESREFOGLU, an individual; and; DOES 1 through 10, inclusive,<br><br>Defendants. | CIVIL ACTION NO. C 08-02113-WHA<br><br>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT<br><br>Date: June 5, 2008<br>Time: 8:00 a.m.<br>Courtroom: 9, 19th Floor |

**PROCEDURAL BACKGROUND**

On March 12, 2008, plaintiff KURTCU filed a class action complaint in San Francisco Superior Court with six causes of action: (1) failure to pay overtime and premium pay; (2) failure to timely pay all wages due; (3) failure to provide meal and rest periods; (4) failure to provide itemized wage statements; (5) failure to pay all wages to separated employees; and (6) unfair competition.

On March 19, 2008, plaintiff took part in what he was told by his union representative was a "mediation" of his October 12, 2007 claim for overtime and underpayment of regular wages. In fact, the March 19 "mediation" turned out to be an arbitration hearing. On April 9, 2008, Arbitrator Ruth Carpenter issued an arbitration decision awarding plaintiff KURTCU $64,048 in overtime and

1

1 regular pay.

2 On April 23, 2008, defendants removed the case to federal district court. On April 28, 2008, defendants filed a Motion to Dismiss for failure to state a claim under Rule 12(b)(6) or, in the alternative, for summary judgment.

## STATEMENT OF FACTS

Defendant U.S. PARKING employs over 100 individuals at numerous parking lots, almost all of which are in San Francisco, CA. Most of the U.S. PARKING employees work as parking lot attendants and most employees are recent immigrants from Turkey, Russia, or the Philippines, with limited understanding of federal, state and local laws, including those governing the right to overtime and double time premium pay. Defendant CIHAT ESREFOGLU, on information and belief, is the sole owner, shareholder and director of U.S. PARKING, INC., and is the alter ego of defendant U.S. PARKING.

Plaintiff IBRAHIM KURTCU, an immigrant from Turkey, has worked for defendant U.S. PARKING as a parking lot attendant for about five or six years and remains employed by U.S. PARKING.

The duties of a parking lot attendant are to collect parking fees, to park and move cars and to keep an eye on the parked cars and the parking lot. The position of parking lot attendant is a non-exempt position with regard to overtime pay.

Plaintiff KURTCU, like other parking lot attendants employed by U.S. PARKING, often worked 12 hours or more per day and also often worked six or seven days per week. Their supervisors were aware that KURTCU and other parking attendants were working such long hours because the employees reported their hours on timesheets that they turned in to their supervisors, and for other reasons. Despite these long hours, until on or about January 1, 2007, defendants willfully failed to pay plaintiff KURTCU and other parking lot attendants at one-and-a-half times their regular rate of pay when required by law, and failed to pay parking lot attendants at double the regular rate of pay when required by law.

Defendant U.S. PARKING willfully failed to pay plaintiff KURTCU and other parking attendants all of their regular time wages for all hours they worked on a timely basis as required by

2

1  law. Instead, U.S. PARKING paid plaintiff KURTCU and other parking attendants at less than their
2  regular hourly rate of pay established by contract.
3       In addition, defendant U.S. PARKING willfully failed to pay plaintiff KURTCU and other
4  parking attendants the full wages and compensation they were due by contract, insofar as U.S.
5  PARKING failed to pay plaintiff KURTCU and other parking attendants for their vacation time,
6  holiday pay, sick and hospital leave pay, other paid leaves of absence (for jury duty, subpoenas,
7  bereavement and voting), health, dental-orthodontia, prescription drug, vision, accident, sick,
8  disability and life insurance, pension, 401k benefits, commuter check, free uniforms, boots, tools and
9  rain gear, plus maintenance of same, and other benefits - to which they were entitled. Plaintiff
10 KURTCU and other parking attendants were harmed by U.S. PARKING's actions in many ways,
11 including but not limited to they sometimes were forced to purchase these benefits separately or they
12 had to pay much more for services, such as medical or dental services, because they lacked insurance
13 coverage due to Defendants' actions.
14      Defendant U.S. PARKING issued plaintiff KURTCU and other parking attendants wage
15 statements showing only a fraction of the actual hours they worked.  At the same time, defendant
16 U.S. PARKING paid plaintiff KURTCU and other parking attendants in cash for some, but not all
17 of the remaining hours they worked. U.S. PARKING did this apparently in order to pay less than
18 required by law for the benefits and taxes of plaintiff KURTCU and other parking attendants.
19 However, as a consequence of this system of paying some wages "under the table," plaintiff
20 KURTCU and other parking attendants have been harmed or will be harmed because the benefits
21 they have received or will receive, including, but not limited to unemployment insurance, disability
22 insurance, workers compensation and social security benefits - depend on the amount of wages
23 officially reported to the state and federal governments.
24      Defendant U.S. PARKING also failed to ensure that plaintiff KURTCU and other parking
25 lot attendants had meal and rest period breaks as required by law, in which they were free of work
26 responsibilities. As a consequence, plaintiff and other parking attendants were forced to work during
27 their rest periods and eat while they worked during their meal periods.
28      On information and belief, when parking lot attendants were terminated, laid off or resigned

3

from their jobs with defendant U.S. PARKING, they were not paid all the wages they had earned at the time their employment ended or within 72 hours of the time their employment ended.

Many, if not most of U.S. PARKING's parking lots lack bathrooms, lunch rooms, running water, electricity and shelter from the elements. This means that plaintiff KURTCU and other parking attendants have to work in the rain and cold with little or no protection, leading in some cases to injuries, illness or aggravation of existing conditions.

## ARGUMENT

### I. LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(6)

In the Ninth Circuit, a dismissal under Fed. R. Civ. P. Rule 12(b)(6) is warranted only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). A 12(b)(6) motion to dismiss is "viewed with disfavor and is rarely granted." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

The purpose of a Rule 12(b)(6) motion to dismiss is to merely to test the legal sufficiency of the claims stated in the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). A Rule 12(b)(6) motion cannot be granted unless "it appears <u>beyond doubt</u> that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (emphasis added) The court must decide whether the facts alleged, if true, would entitle plaintiff to some legal remedy. Unless the answer is unequivocally no, the motion must be denied. *Id.*

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations in the Complaint, as well as all reasonable inferences to be drawn from them. *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). No matter how improbable the facts alleged are, they must be accepted as true for purposes of the motion. *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 1833 (1989).

Recovery may seem remote and unlikely on the face of the pleadings, but that is not the test for dismissal." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996). The "court's role at the 12(b)(6) stage is not to decide winners and losers or evaluate the strength or weakness of claims." *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1292 (9th Cir. 1997).

With limited exceptions, <u>only the pleadings, and not facts presented in affidavits,</u>

declarations or briefs, may be considered on a 12(b)(6) motion. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991). Hence, none of the declarations submitted by defendants may be considered on defendants' 12(b)(6) motion.

## II. BECAUSE PLAINTIFF'S ARBITRATION AWARD DOES NOT BAR ALL OF PLAINTIFF'S CLAIMS IN THIS ACTION OR ANY OF THE CLASS CLAIMS, DISMISSAL UNDER RULE 12(b)(6) IS IMPROPER

Defendants' motion is based on a false premise – that all of the claims in plaintiff's Complaint were resolved by the April 9, 2008 arbitration award he received. This is not so. Only plaintiff KURTCU's individual claims for overtime and failure to pay full regular time wages were addressed and allegedly resolved.

The April 9, 2008 Decision and Award by arbitrator Ruth Carpenter states that the "Issue" addressed at the arbitration was that "Ibrahim E. Kurtcu contends that he did not receive the correct amount of pay or benefits for the time that he has worked for this Employer." Meal and rest periods and failure to provide itemized wage statements as required by the California Labor Code, are not mentioned anywhere in the Decision and Award. Thus, plaintiff KURTCU's individual claims under the second cause of action for failure to provide meal and rest periods, and under the third cause of action for failure to provide itemized wage statements – were not addressed or resolved in the April 9 arbitration award.

More significant, the claims of the putative class were never even addressed, much less resolved in the April 9 arbitration award.

Because both the putative class and plaintiff KURTCU individually have viable claims notwithstanding the April 9 arbitration award, dismissal under Rule 12(b)(6) is improper. A Rule 12(b)(6) motion cannot be granted unless "it appears <u>beyond doubt</u> that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46.

*Johnson v. New York State Education Dept.*, 409 U.S. 75, 93 S.Ct. 259, 34 L.Ed2d 290 (1972) is instructive. *Johnson* concerned a class action challenging the constitutionality of a law denying textbooks to schools unless school district voters approved a tax for the purchase of textbooks. The U.S. Supreme Court vacated judgment for defendants, which had been granted on

5

1  the basis that the case was moot with regard to the class representatives.

2  Justice Marshall noted in this unanimous decision, "Nor should the District Court overlook
3  the fact that this is a class action brought by petitioners 'on their own behalf and on behalf of their
4  children and all other persons similarly aggrieved.' Even if the case is now moot as to these
5  particular petitioners, there may be other members of the class who remain aggrieved and thus the
6  action may remain a viable one." *Id.*, 409 U.S. at 79, fn. 7.

7  Just as in *Johnson*, even if this action is moot with regard to certain of class representative
8  Kurtcu's claims, it does not follow that the case is moot as to the putative class he represents.

9  If this class action is dismissed as defendants seek, it would encourage defendants to dismiss
10 any similar class actions by the same means. which as the U.S. Supreme Court warned in a similar
11 situation, "obviously would frustrate the objectives of class actions; moreover it would invite waste
12 of judicial resources by stimulating successive suits brought by others claiming aggrievement."
13 *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427
14 (1980).

15 The situation here is also similar to that in *Schaake v. Risk Mgmt. Alternatives, Inc.*, 203
16 F.R.D. 108 (S.D.N.Y. 2001). There, the district court denied a motion to dismiss a class action
17 alleging violation of the Federal Debt Collection Practices Act where defendant had made a Rule 68
18 offer of full relief to the class representative. The *Schaake* court found that the offer of full relief to
19 the class representative alone did not resolve the issues for the putative class because "an offer to one
20 is not an offer of the entire relief sought by the suit." *Id.* at 111, quoting *Greisz v. Household Bank,*
21 *N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999).

22 Here, because the arbitration award resolved only some issues for plaintiff KURTCU and did
23 not resolve any of the class issues, defendants' motion to dismiss should be dismissed, just as in
24 *Schaake*.

25 Defendants' argument that the claims of plaintiff KURTCU and the putative class he
26 represents are barred on the basis of res judicata, is baseless. A claim can be barred on the basis of
27 res judicata only if the prior judgment involved (1) the same claim, (2) the same parties and (3)
28 resulted in a final judgment on the merits. *Blonder-Tongue Laboratories, Inc. v. University of*

*Illinois Foundation*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453 (1971).

Here, res judicata cannot bar the claims of the putative class because the putative class was not involved in plaintiff KURTCU's arbitration and there was no prior final judgment on the merits of any of the putative class claims in this action. With regard to plaintiff KURTCU's individual claims, even assuming the latter two elements of res judicata are met, the first element is not met because the claim for violation of the meal and rest period statute and the claim for failure to provide accurate wage statements are distinct and different from the overtime and regular pay claims that were addressed in arbitration.

*Kemp v. California Fed. of Teachers*, 2002 U.S. Dist. LEXIS 24308, 2002 WL 31855293 (N.D.Cal. 2002), on which defendants rely extensively, is distinguishable because that case was an individual lawsuit, not a class action, and not just some, but all of plaintiff's claims in *Kemp* had been resolved in the prior arbitration.

This is not an "extraordinary" case which merits dismissal pursuant to Rule 12(b)(6). Because it is possible that plaintiff KURTCU may be able to prove his *class claims* as well as some of his individual claims, dismissal under Rule 12(b)(6) must be denied. *Conley v. Gibson*, 355 U.S. at 45-46; *Johnson v. New York State Education Dept.*, 409 U.S. at 79, fn. 7; *Schaake v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. at 111.

## CONCLUSION

For the reasons stated above, plaintiff IBRAHIM E. KURTCU respectfully requests that the Court deny defendants' motion to dismiss for failure to state a claim or, in the alternative, for summary judgment.

Dated: May 15, 2008

Respectfully submitted,

MINAMI TAMAKI LLP

By: _____

JOHN OTA
Attorneys for Plaintiff

7